IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 17-cv-01307-CMA-MEH

MATTHEW PILATTI, an individual,

Plaintiff,

v.

HACIENDA II PARTNERS, LLLP

Defendant.

---

**DEFENDANT HACIENDA II PARTNERS, LLLP'S F.R.E. 702 MOTION TO EXCLUDE PLAINTIFF'S DESIGNATED EXPERT JEREMY SWENSON**

---

Defendant, **HACIENDA II PARTNERS, LLLP,** by its attorneys, **LASATER & MARTIN, P.C.,** and pursuant to F.R.E. 702, submits the following Motion to Exclude Plaintiff's Designated Expert Jeremy Swenson:

### I.      CERTIFICATE OF CONFERRAL

Undersigned counsel conferred by telephone with Plaintiff's counsel as to this Motion and the relief requested herein. Plaintiff opposes the Motion and the requested relief.

### II.      RELEVANT BACKGROUND

This matter arises out of an alleged slip and fall at the Hacienda Colorado restaurant in Englewood, Colorado. Plaintiff claims that on January 18, 2017, he entered Hacienda as a patron without seeing any snow or ice on the parking lot. He alleges he fell on a small patch of black ice in the Hacienda Colorado parking lot after he exited the restaurant. He asserts a claim against Defendant Hacienda II Partners, LLLP (hereinafter, "Hacienda") pursuant to Colorado's Premises

Liability Act, C.R.S. § 13-21-115. Hacienda denies that a dangerous condition existed in its parking lot and denies any actual knowledge or reason to know of any alleged dangerous condition. It denies that it failed to exercise reasonable care to protect against any alleged danger.

Plaintiff designated a snow removal contractor from Kansas City named Jeremy Swenson as a retained expert witness to offer opinions as to liability. Exhibit A, Plaintiff's F.R.C.P. 26 (a)(2) Expert Disclosure, Section (I)(1). Mr. Swenson holds himself out as an expert in snow and ice removal, and the opinions he has offered in this case concern only the area of snow and ice removal. Exhibit B, Deposition of Jeremy Swenson, October 9, 2018 (hereinafter, "Swenson Deposition"), at 4.4-5, 4.8-11. Mr. Swenson does not hold himself out as an expert in property management or small business practices regarding snow and ice removal. *See id*. at 4.12-14. Mr. Swenson is a high school graduate who started a mulch company, began to perform snow removal, and formed a commercial snow removal company operating in the Kansas City area. *Id*. at 8.17-20, 15.5-8, 15.17-16.7, 17.12-18.11. He has never been hired to do any snow or ice removal in the State of Colorado. *Id*. at 55.6-21.

Neither Plaintiff nor Mr. Swenson claim that snow fell at Hacienda Colorado on the day of the incident or on the day before the incident. Exhibit C, Deposition of Matthew Pilatti, April 12, 2018 (hereinafter, "Pilatti Deposition"), at 20.13-21; Exhibit D, Swenson Report, at p. 3, ¶ 1. Plaintiff fell after he exited the restaurant after having walked through the restaurant parking lot on his way into the restaurant without incident. Exhibit C, Pilatti Deposition, at 33.12-14. As relevant to the condition of the parking lot, **Plaintiff testified that when he walked through the parking lot on his way into the restaurant, in daylight, he saw no snow or ice on the surface of the parking lot.** *Id*. at 28.16-21, 32.15-21, 161.9-12. He claims he fell on a small patch of black ice as he was walking through the parking lot to his vehicle after exiting the restaurant. *Id*.

2

at 49.24-50.6, 50.18-21. He testified that he did not see the alleged ice at any time before his fall. *Id*. at 191.22-24. He did not see any ice in the parking lot other than the ice he claims he fell on. *Id*. at 175.23-176.2. He has no photographs of ice in the parking lot, no photographs of snow in the parking lot, and no photographs of the parking lot on the night of the incident. *See id*. at 64.21-65.6. No eyewitness, other than Plaintiff himself, has testified that ice was present in the parking lot.

As to how the alleged ice patch was present when he walked out of the restaurant when Plaintiff had seen no snow or ice in the parking lot on his way into the restaurant, Plaintiff speculates water melted from a grassy median in the parking lot, that the snow melt then ran under a parked car, and that a small amount, only "10-18 inches" wide, extended past the parked vehicle. *See id*. at 50.18-52.20, 161.13-17. He speculates that the water froze while he was eating dinner. *Id*. at 161.13-17. He claims he slipped on the newly formed ice without seeing it. *Id*. at 191.22-24. Plaintiff cannot say whether the ice would have been visible to someone standing next to it. *Id*. at 160.16-25. He has no specific reason to believe that Hacienda knew about the alleged ice. *Id*. at 155.15-19. He does not explain how Hacienda could have seen it when he himself did not.

Regarding the existence of the alleged ice, Mr. Swenson testified that there "was probably something minor there" in the parking lot, stating: "I don't think it was something major, I think there was something minor." Exhibit B, Swenson Deposition, at 81.17-22. He believes that the parking lot was "probably mainly clear." *Id*. at 79.13-80.2. He claims that there may have been snow or ice left over in the parking lot from a storm two days earlier, but that is only "speculation." *Id*. at 133.14-20. He testified as follows:

> Q: So that's just speculation on your part that there's snow left over in the parking lot, right—
>
> A: Well—

3

Q: —As of January the 18th at 9:00 o'clock?

A: Or potential ice, yeah, or the remains of it, yes, that's my opinion, that is speculation, yes.

*Id*. at 133.14-20. Mr. Swenson admits Plaintiff could have "tripped on his shoe laces and suffered an injury" or that Plaintiff "could have slipped on maybe a little piece or gravel" or some other substance besides ice. *Id*. at 62.25-63.9.

At-issue is whether a dangerous condition was present and whether Hacienda failed to exercise reasonable care to protect against a danger of which it knew or should have known. C.R.S. § 13-21-115. The alleged danger is a small finger of ice in the parking lot of a Colorado restaurant in January, and the alleged failure (as identified by Mr. Swenson) involves the failure to apply salt or deicer to wet areas and the failure to remove snow from the parking lot two days prior to the incident. Mr. Swenson's primary assertions are that (1) ice was present in the parking lot, and (2) Hacienda's failure to apply salt or deicer on the day of the incident or remove snow from the parking lot two days prior to the incident was an unreasonable failure to exercise reasonable care and caused the Plaintiff to fall. Exhibit D, Swenson Report, at p. 9, ¶ 1-3, p. 21, ¶ 13; Exhibit B, Swenson Deposition, at 127.7-22. In summary, Mr. Swenson claims that Hacienda should have identified an area of thaw where water "might refreeze" and "throw[n] some…de-ice"[1] on top of it once a day. Exhibit B, Swenson Deposition, at 127.12-22.

None of Mr. Swenson's opinions are necessary to "assist the trier of fact to understand the evidence or to determine a fact in issue." F.R.E. 702. Rather, Mr. Swenson offers opinions as to issues which are well within the understanding and experience of the average layperson. Mr. Swenson's testimony will not be helpful to the trier of fact where he offers no analysis other than

---

[1] Swenson has performed no scientific analysis regarding the properties or effectiveness of any specific substance he alleges Hacienda should have applied to the parking lot.

4

that which jurors are capable of performing themselves, and opinions jurors are capable of forming based on their own common knowledge and experience. Mr. Swenson's "speculation" as to the presence of snow and ice in the parking lot is wholly unnecessary and misleading where eyewitness testimony regarding the actual condition of the lot will be presented. Moreover, Mr. Swenson offers opinions as to reasonable care and causation which serve no purpose other than to invade the province of the jury and tell it how to decide the case. Finally, Mr. Swenson is unqualified to offer opinions as to the standard of care for the management of a restaurant property.

### III. STANDARD OF REVIEW

The trial court must ensure that any expert testimony admitted is both reliable and relevant. *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 589 (1993); *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 141 (1999). The admission of expert testimony is governed by Federal Rule of Evidence 702. It provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> **(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue**;
> **(b)** the testimony is based on sufficient facts or data;
> **(c)** the testimony is the product of reliable principles and methods; and
> **(d)** the expert has reliably applied the principles and methods to the facts of the case.

F.R.E. 702 (emphasis added). The proponent of expert testimony testimony bears the burden of establishing that the expert is qualified, that his or her opinions are sufficiently reliable, and that his or her opinions will be helpful to the jury. *See Norris v. Baxter Healthcare Corp.*, 397 F.3d 878, 881, 886-87 (10th Cir. 2005).

Whether expert testimony will "help the trier of fact to understand the evidence or determine a fact in issue" goes primarily to relevance. *Daubert,* 509 U.S. at 591-92. In evaluating

5

whether the testimony will be sufficiently helpful, the court may consider: (1) whether the testimony is relevant; (2) whether it is within jurors' common knowledge and experience; and (3) whether it will usurp the jurors' role of evaluating a witness's credibility. *United States v. Rodriguez-Felix*, 450 F.3d 1117, 1123 (10th Cir. 2006). Expert testimony may be admissible *if* it concerns matters that are beyond the understanding of the average lay person. *United States v. Frazier*, 387 F.3d 1244, 1262-63 (11th Cir. 2004) (citing *United States v. Rouco*, 765 F.2d 983, 995 (11th Cir. 1985)). Expert testimony must offer something beyond the understanding and experience of the average juror. *Rodriguez-Felix*, 450 F.3d at 1125-26; *Rouco*, 765 F.2d at 995. Expert testimony based on experience is justified where the purported expert's experience is beyond that of the typical juror. *See United States v. Rodriguez*, 125 F. Supp. 3d 1216, 1236-37 (D.N.M. 2015). Expert testimony generally will not help the trier of fact when it offers nothing more than what lawyers for the parties can elucidate on cross-examination of lay witnesses or argue to the jury in closing. *Frazier*, 387 F.3d at 1262-63; *Rodriguez-Felix*, 450 F.3d at 1123.

Finally, if the court concludes that expert testimony is both reliable and relevant, it still must be satisfied that the testimony is not more prejudicial than probative. F.R.E. 403; *Daubert*, 509 U.S. at 595. Exclusion under F.R.E. 403 is appropriate if the probative value of otherwise admissible evidence is substantially outweighed by its potential to confuse or mislead the jury, or by concerns of waste of time or the unnecessary presentation of cumulative evidence. *See, e.g., Frazier*, 387 F.3d at 1263. Expert testimony "may be assigned talismanic significance in the eyes of lay jurors, and, therefore, the district courts must take care to weigh the value of such evidence against its potential to mislead or confuse." *Id*.

An appellate court reviews the manner in which the district court exercises its *Daubert* gatekeeping role in deciding whether to admit or exclude expert testimony for an abuse of discretion.  *Norris*, 397 F.3d at 883 (citations omitted) (quotation omitted).

## IV.     OPINIONS TO BE EXCLUDED

This Motion seeks to exclude Mr. Swenson's testimony in its entirety.  Mr. Swenson makes the following conclusions or assertions:

1. More likely than not "there was ice present in the Hacienda Colorado restaurant parking lot the evening of January 18, 2017" at the time of Mr. Pilatti's fall.  Exhibit D, Swenson Report, at p. 9, ¶ 2 (hereinafter, Opinion 1);

2. In accordance with Mr. Pilatti's testimony, it is "possible" that snow melted from the grassy median and then froze, creating ice.  Exhibit B, Swenson Deposition, at 123.14-16; 128.24-129.5 (hereinafter, Opinion 2);

3. Contrary to Plaintiff's testimony, it is likely there was snow and ice present in the parking lot throughout the evening which was left over from a previous snow storm. *Id*. at 120.6-123.16 (hereinafter, Opinion 3);

4. Hacienda should have patrolled the parking lot once a day to look for potential areas of melting and re-freezing and put ice melt on those areas, and if they saw a wet or icy patch, they should have put deicer or salt on it.  Exhibit B, Swenson Deposition, 93.2-8, 126.20-23, 127.7-11; Exhibit D, Swenson Report, at p. 21-22, ¶ 13-14 (hereinafter, Opinion 4).

5. Hacienda should have taken action to remove snow from its parking lot after snow fell on January 16, 2018 [two days prior to the incident].  Exhibit D, Swenson Report, at p. 11, p. 14-15 (hereinafter, Opinion 5);

6. Hacienda should have had a written policy regarding snow and ice mitigation, as opposed to a verbal policy, because, although it is possible to do good snow and ice removal with a verbal plan, a written policy is preferable to a verbal policy.  Exhibit B, Swenson Deposition, at 99.3-7, 124.18-125.1; Exhibit D, Swenson Report, at p. 12-13, ¶ 4, p. 23, ¶ 19 (hereinafter, Opinion 6).

7. Hacienda failed to provide reasonable snow and ice removal training for its managers and employees.  Exhibit D, Swenson Report, at p. 15-16, ¶ 7 (hereinafter, Opinion 7).

8. Hacienda unreasonably failed to provide reasonable ongoing snow and ice mitigation services as part of its internal snow and ice removal plan. *Id*. at p. 17-18, ¶ 9 (hereinafter, Opinion 8).

9. All of the instances in which Hacienda "unreasonably failed to exercise reasonable care more likely than not caused the slip and fall incident on a dangerous condition (snow and ice) that injured Matthew Pilatti." *Id*. at p. 9, ¶ 1 (hereinafter, Opinion 9).

## V.     ARGUMENT

### a. Opinions 1 and 3 would not assist the jury where there is eyewitness testimony as to the condition of the parking lot.

Jeremy Swenson has never been to the Hacienda restaurant where Plaintiff's fall occurred. Exhibit B, Swenson Deposition, at 53.2-4. He has seen no photographic or documentary evidence depicting the conditions at the site. *Id*. at 107.15-20. He could not look at a map of the Denver area and point, even generally, to the area where Hacienda is located. *Id*. at 53.9-11. He provides no helpful knowledge as to the condition of the parking lot on the night of the incident. Plaintiff himself was present in the parking lot and can provide eyewitness testimony as to his claimed observations, and Plaintiff has disclosed several alleged witnesses to the incident who presumably can also provide eyewitness testimony. Swenson's testimony that ice was present in the parking lot merely vouches for the credibility of Plaintiff's account. Expert testimony "which does nothing but vouch for the credibility of another witness encroaches upon the jury's vital and exclusive function to make credibility determinations, and therefore does not 'assist the trier of fact' as required by Rule 702." *United States v. Charley*, 189 F.3d 1251, 1267 (10th Cir. 1999) (holding it was error to permit psychiatrist to testify girls were sexually assaulted based on claims girls made to psychiatrist).

As to Swenson's claim that because it had snowed two to three days before the incident, it is likely ice was left over from that snowfall, ordinary jurors are well-equipped to conclude whether ice could be left over from a prior snowfall. Swenson relied on no science or data to support his statement. Regardless, Swenson himself characterized his assertion (contrary to Plaintiff's own

8

testimony) that there *may* have been snow or ice in the parking lot as "speculation." Exhibit B, Swenson Deposition, at 133.14-20. He admitted that he knows of no evidence, no testimony, and no pictures indicating that there was snow on the parking lot. *Id*. at 136.15-137.20. His claim is based not on any eyewitness testimony or documentary evidence but is an assumption that some snow or ice would have been left over from a snowfall on January 16th. *Id*. at 118.15-119.6, 120.6-22, 132.24-133.5, 136.15-25. The undisputed eyewitness testimony is that there was no snow present in the parking lot. Exhibit C, Pilatti Deposition, at 28.16-21, 31.2-8. 32.15-21, 161.9-12. Indeed, Mr. Swenson admits that he is unaware of any testimony that there was any snow in the parking lot. Exhibit B, Swenson Deposition, at 133.6-13. It would be wholly unnecessary and unwarranted to allow Mr. Swenson to speculate as an "expert" to the condition of the parking lot where he provides information which is inferior to the testimony of eyewitnesses who were present in the parking lot and observed its actual condition on the night of the incident.

b. **Opinions 2 through 8 will not assist the jury where they do not fall outside ordinary jurors' common knowledge and experience.**

The court must evaluate Swenson's testimony based on a commonsense inquiry: would an untrained layperson be qualified to determine the particular liability issues involved in this case intelligently without enlightenment from those having a specialized understanding of snow and ice mitigation? *See People v. Masters*, 33 P.3d 1191, 1201 (Colo. App. 2001), *aff'd*, 58 P.3d 979 (Colo. 2002) (quoting *Lanari v. People*, 827 P.2d 495 (Colo. 1992)). How a patch of ice might reasonably have been mitigated in the parking lot of Hacienda Colorado does not require the enlightenment of an expert.

The Tenth Circuit's decision in *United States v. Rodriguez-Felix*, 450 F.3d 1117 (10th Cir. 2006), is instructive. There, the court addressed the helpfulness of proffered expert testimony questioning the reliability of eyewitness identification. *Id*. at 1122. The court stated that in a

narrow class of cases, where it would assist the jury by describing certain factors which fall outside a typical juror's experience, such testimony may be admitted. *Id*. at 1124. However, it made clear that courts must carefully supervise the admission of such testimony, assessing the particular facts of each case and excluding testimony which is unnecessary to assist the jury. *Id*. The court held that the testimony at-issue was properly excluded. *Id*. at 1126. Although "on a superficial level," the testimony was "plausibly relevant" because it went to one of the key issues at trial, it failed the more fundamental inquiry because it did not fall outside the jurors' common knowledge and experience. *Id*. at 1126. Although the expert was a university professor and would provide expertise in memory and decision processes underlying witness identification, his expertise was not needed. *See id*. at 1122, 1126. Significant to the Court's decision was the fact that the defendant had abundant opportunity to cross-examine each of the prosecution's eyewitnesses at length, challenging the identification of each witness and highlighting many of the same weaknesses to which his expert would testify. *Id*.

At least one court has prohibited Mr. Swenson from testifying as an expert in a slip and fall case because his testimony would not aid the jury. Exhibit E, Order, *Addison, et al. v. Bucks Corp., Inc., d/b/a/ Bucky's Express*; Exhibit B, Swenson Deposition, at 50.4-21. As in the present case, the plaintiff designated Mr. Swenson as an expert witness in snow removal. The defendant challenged Swenson's testimony in part on the grounds that it would provide no meaningful assistance to the trier of fact. Exhibit E, Order, at ¶ 2. The court agreed, relying on authority excluding expert testimony because little outside information was necessary to aid the jury where maintenance and supervision of an outdoor area was at-issue. *Id*. at ¶ 5-6. It held that Swenson's testimony about a site that he had not observed personally would provide the jury with little outside

10

information to aid it in reaching its conclusion, and, regardless, little outside information would be necessary to aid the jury in a slip and fall case involving snow removal. *Id*. at ¶ 6.

Likewise, here, Swenson's testimony as to Opinions 2 through 8 would be superfluous and a waste of time. He does not seek to opine as to highly specialized or technical snow removal practices (if such practices can be said to exist); indeed, there was not even a snow event on the day of the incident. Rather, Swenson seeks to point out that on a cold January evening in Colorado, it would have been reasonable for Hacienda to apply ice melt to a wet or icy area. Exhibit B, Swenson Deposition, at 127.7-11. Alternatively, he seeks to opine that days before the incident, when whether data allegedly shows that it snowed 3.9-5.2 inches at a location other than the Hacienda Colorado restaurant, Hacienda should have removed the snow from its parking lot. Exhibit D, Swenson Report, at p. 10-11, ¶3. Where Plaintiff has testified that there was no snow in the parking lot on the night of the incident, testimony as to what snow removal Hacienda allegedly should have performed two to three days prior is wholly irrelevant. Regardless, average jurors are perfectly capable of reaching those conclusions themselves, and Swenson is not using scientific, technical, or specialized knowledge or insight.

Similarly, the fact that Plaintiff himself came to the conclusion that it is possible snow melted from the grassy median and then refroze on the parking lot evinces the frivolity of Mr. Swenson's testimony to that issue. Any layperson can evaluate whether snow may have melted and formed ice on a cold evening. No specialized knowledge or experience would benefit jurors in this regard, nor does Swenson provide any scientific information or knowledge outside common experience.

As he was in *Addison*, Swenson should be excluded because he cannot provide the jury with outside information as to the condition of the parking lot where he merely relies on Plaintiff's

description and a Google maps overview of the site. As in *Rodriguez-Felix*, although Swenson may be said to have some expertise in commercial snow removal practices, his expertise is unnecessary in this context. Finally, Swenson's asserted conclusions as to Hacienda's alleged failure to exercise reasonable care are conclusions jurors can make based on their own experience, and jurors are not only capable of making such conclusions—it is their *purpose* to do so. Swenson is providing the jury with the very determinations it is tasked with reaching, and he is giving them no information other than that which they already possess to assist them in evaluating Hacienda's conduct. In short, Swenson's presence at trial is wholly unnecessary and inappropriate.

### c. **Opinion 9 constitutes an impermissible legal conclusion.**

An expert "may not state legal conclusions drawn by applying the law to the facts." *United States v. Richter*, 796 F.3d 1173, 1195 (10th Cir. 2015) (citation omitted) (quotation omitted). Permissible testimony "provides the jury with the tools to evaluate an expert's ultimate conclusion and focuses on questions of fact that are amenable to the scientific, technical, or other specialized knowledge within the expert's field." *Id.* at 1195. Impermissible testimony instructs the jury how it should rule. *Id.* An expert must assist the jury by adding some specialized insight, rather than merely supplant its judgment by directing it to reach a particular conclusion as to an issue it is capable of determining without the aid of specialized knowledge. *See id.* at 1195-96.

Mr. Swenson states in his report the very conclusions the jury will be asked to reach; he claims throughout his report that Hacienda "unreasonably failed to exercise reasonable care," parroting the legal standard, and he goes on to make the ultimate conclusion that Hacienda "unreasonably failed to exercise reasonable care" and that its alleged failures "more likely than not caused the slip and fall incident on a dangerous condition (snow and ice) that injured Matthew Pilatti." Exhibit D, Swenson Report, at p. 9, ¶ 1. His statements would supplant the jury's judgment, and he provides no scientific, technical, or other specialized knowledge which would

12

aid the jury in evaluating whether Hacienda exercised reasonable care, or whether Hacienda's alleged failure caused the Plaintiff's injury.

### d. **Mr. Swenson is unqualified to offer Opinions 7 and 8.**

Mr. Swenson has been permitted to testify as an expert at only a single trial. Exhibit B, Swenson Deposition, at 12.5-13.3. He has never been qualified to give testimony in federal court, he has never testified in federal court, and he has never actually been inside a federal courthouse. *Id*. at 29.21-30.4. Mr. Swenson holds himself out as an expert in snow and ice removal. *Id*. at 4.4-5. He does not hold himself out as an expert in property management. *Id*. at 4.12-14. Regarding whether he holds himself out as an expert in the duties and obligations of small business owners as it relates to their real property, Swenson stated that he is merely an expert in snow and ice removal *contracts*. *Id*. at 4.15-23. He has no qualifications or experience specific to small business ownership or management. *See* Exhibit F, Swenson Curriculum Vitae.

The advisory committee notes to F.R.E. 702 make clear that if a witness is relying on experience as the basis for his qualification to opine regarding an issue, he must demonstrate that his experience is sufficiently specific. They provide: "If the witness is relying solely or primarily on experience, then the witness must explain how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts." F.R.E. 702.

Mr. Swenson's background is specific to acting as a snow removal contractor and managing a company which performs snow and ice removal professionally. See Exhibit F, Swenson Curriculum Vitae; Exhibit B, Swenson Deposition, at 15.7-19.13 (describing experience as professional snow and ice removal contractor). Although he may be qualified to opine as to the duties of a *professional* snow removal contractor based on its contract with a property owner, he has no background or experience which would qualify him to testify to the duties of a restaurant

13

owner in training restaurant employees in snow and ice removal or what internal snow and ice removal plan should be implemented at a small business. As such, he is unqualified to offer Opinions 7 and 8.

### e. Opinions 3 and 5 would mislead the jury and should be excluded pursuant to F.R.E. 403.

Rather than helping the jury, Swenson would mislead it. Expert testimony carries a special danger because it "can be both powerful and quite misleading." *Daubert*, 509 U.S. at 595 (quotation omitted) (citation omitted). As such, in weighing possible prejudice against probative force under F.R.E. 403, courts exercise more control over experts than over lay witnesses. *Frazier*, 387 F.3d at 1263.

Opinion 3 contradicts Plaintiff's own testimony based on his firsthand observations on the night of the incident. There is minimal if any probative value to Swenson's admitted "speculation" that there was snow in the parking lot left over from the prior storm. Where Plaintiff observed no snow, it would be highly misleading to allow Swenson to claim as an "expert" that there was in fact leftover snow in the parking lot.

Opinion 5 would only confuse the issues. At issue is whether Hacienda exercised reasonable care to protect against the specific alleged dangerous condition that caused Plaintiff's injury. Plaintiff claims a patch of black ice which formed from snow melting off a grassy median caused his fall. He has testified that he saw no snow in the parking lot. It is undisputed that there was no snowfall on the day of the incident or the day prior to the incident. As such, at issue is not Hacienda's snow removal activities *two to three days prior to the incident*, but its knowledge and exercise of reasonable care regarding the alleged ice patch Plaintiff claims was present when he exited the restaurant. It would only confuse the issues, mislead the jury, and waste time to allow

14

Swenson to testify to what action Hacienda should have taken two to three days prior to the incident in response to snowfall.

### VI.     WHETHER AN EVIDENTIARY HEARING IS REQUESTED

No evidentiary hearing is requested as to this Motion.

WHEREFORE Defendant requests that this Court exclude Plaintiff's retained expert Jeremy Swenson from testifying at trial.

Respectfully submitted on this 5th day of November, 2018.

LASATER & MARTIN, P.C.

*/s/ Katherine L. Brim*

J. Scott Lasater, #16070
Katherine L. Brim, #46532
8822 S. Ridgeline Blvd., Suite 405
Highlands Ranch, CO 80129
*Attorneys for Defendant*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 5th day of November, 2018, a true and correct copy of the foregoing DEFENDANT HACIENDA II PARTNERS, LLLP'S F.R.E. 702 MOTION TO EXCLUDE PLAINTIFF'S RETAINED EXPERT JEREMY SWENSON was electronically filed using CM/ECF and served via electronic mailing on all counsel of record.

Myers & Company, P.L.L.C.
Michael David Myers
1530 Eastlake Avenue East
Seattle, Washington 98102
mmyers@myers-company.com
slin@myers-company.com

THOMAS KEEL & LAIRD, LLC
Matthew R. Laird, Esq.
Isobel S. Thomas, Esq.
50 South Steele Street, Suite 450
Denver, Colorado 80209
ithomas@thomaskeel.com
mlaird@thomaskeel.com

                                                                                                  */s/ Kate Braden*