IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

MATTHEW PILATTI, an individual,

                      Plaintiff,

    vs.

HACIENDA II PARTNERS, LLLP; and
EMERALD ISLE LANDSCAPING, INC., a
Colorado corporation

                   Defendants.

Civil Action No.: 17-cv-01307-MEH

---

### PLAINTIFF'S C.R.C.P. 26(a)(2)(B)(I) and (II) EXPERT DISCLOSURES

---

## I.    C.R.C.P. 26(a)(2)(B)(I) DISCLOSURES

Experts specially retained on behalf of Plaintiff will be asked to provide testimony concerning their background, training, qualifications and experience, the materials reviewed and, where applicable, the applicable literature relied upon in forming their opinions and conclusions.

Specially retained experts will be asked to testify concerning the nature of their business or practice, their education, training and experience as set forth in their *curriculum vitae*, their familiarity and basis for their familiarity with the applicable technical standards, as well as their knowledge and experience concerning the issues in the case. These experts will be asked to provide opinion testimony based generally on their knowledge, education, training, and experience, as well as knowledge and review of applicable literature, published treatises, periodicals, pamphlets, facts or data made known to them at or before trial, and any other facts or data reasonably relied upon by experts in the field in forming opinions.



EXHIBIT
A

Plaintiff reserves the right to offer opinion testimony deemed to be relevant and admissible by the Court in accordance with opinions rendered during depositions of experts and to pose hypothetical questions to them at trial based upon evidence to be introduced at trial. Plaintiff reserves the right to ask retained experts to review and possibly revise or modify their opinions based upon deposition testimony of defense experts, as well as newly provided facts, opinions, records and/or materials and to answer, rebut or respond to the testimony and/or opinions of defense experts deemed by the Court to be relevant and admissible.

Plaintiff anticipates using various exhibits in connection with or to illustrate the testimony of all experts, including, without limitation, testimony excerpts, timelines, anatomic drawings and/or models, enlargement of records, applicable standards, and related materials. Plaintiff reserves the right to use diagrams, graphs, models and/or other demonstrative evidence to illustrate the testimony of all experts.

The opinions of all experts contained herein will be expressed to reasonable medical and/or scientific probability.

      1.   **Jeremy E. Swenson, CSP**
           **11940 Cartwright Avenue, Suite 300**
           **Grandview, MO 64030**
           **(816) 564-9131**

    A.   <u>Area of Specialization, Qualifications and Compensation</u>: Mr. Swenson's CV is attached hereto as **Exhibit 1**, his testimony history as **Exhibit 2,** and his fee schedule and fees charged in this care are attached as **Exhibit 3.** Mr. Swenson is a certified snow professional, with specialized knowledge, training, education, and skill in snow and ice mitigation and removal, the business of snow and ice removal and mitigation, snow and ice science, and snow and ice operations and techniques of the snow removal industry. Mr. Swenson's area of specialized

knowledge and qualifications are described in greater detail in his signed Report, which is attached as **Exhibit 4**.

  B. <u>Materials Reviewed:</u> Mr. Swenson's report is attached as **Exhibit 4.** The materials he reviewed are itemized in his report.

  C. <u>Basis of Testimony</u>: Mr. Swenson's opinions are based on his education, training and experience, background and knowledge of relevant literature. Mr. Swenson has described the material reviewed and the basis of his opinions in his attached report, **Exhibit 4**.  Mr. Swenson reserves the right to review any newly-produced documents.

  D. <u>Summary of Testimony</u>:  Mr. Swenson's report is attached as **Exhibit 4.** All of his opinions and anticipated testimony are based on a reasonable degree of certainty in the field of snow removal. This endorsement specifically incorporates any opinions Mr. Swenson may render during his deposition, if taken.

  As discovery progresses, Mr. Swenson will be asked to comment and give his opinions in other areas of his specialty in which he is competent to testify, which cannot be anticipated at this time. He will also be asked to give additional rebuttal testimony when the Defendants' positions are fully disclosed, and the Defendants' expert witness depositions have been taken.  Mr. Swenson reserves the right to supplement these opinions based on future depositions and discovery in this case.  Mr. Swenson is expected to testify in accordance with his deposition, if taken.

  E. <u>Exhibits</u>: Witness may use drawings and other demonstrative exhibits to illustrate his testimony, including medical and anatomical models, illustrations, diagrams, overheads or projections of illustrations or diagrams, slides, imaging studies, and literature.

   **2. Matthew S. Potter, M.S.**
    **Weather Works, LLC**
    **P.O. Box 7100**

**Hackettstown, NJ  07840**
**(908) 850-8600**

A.     <u>Area of Specialization, Qualifications and Compensation</u>: Mr. Potter's CV is attached as **Exhibit 5**, his testimony history as **Exhibit 6,** and his fee schedule and fees charged in this care are attached as **Exhibit 7.** Mr. Potter is a forensic meteorologist.  Mr. Potter received his Masters of Science in Atmospheric Sciences from the University of Albany and his Bachelor of Science in Meteorology from Millersville University.   Mr. Potter's areas of specialization and qualifications are more fully described in his CV, **Exhibit 5**, as well as his Signed Report, **Exhibit 8**.

B.     <u>Materials Reviewed:</u>  Mr. Potter's report is attached as **Exhibit 8.** The materials he reviewed are itemized in his report.

C.     <u>Basis of Testimony</u>: Mr. Potter's opinions are based on his education, training and experience, background, knowledge of relevant literature, as well as on that information listed in his signed report, **Exhibit 8**. Witness reserves the right to review any newly-produced documents.

D.     <u>Summary of Testimony</u>:  Mr. Potter's report is attached as **Exhibit 8.** All of Mr. Potter's opinions and anticipated testimony are based on a reasonable degree of certainty in the field of forensic meteorology. This endorsement specifically incorporates any opinions Mr. Potter may render during his deposition, if taken.

As discovery progresses, Mr. Potter may be asked to comment and give his opinions in other areas of his specialty in which he is competent to testify, which cannot be anticipated at this time. He will also be asked to give additional rebuttal testimony when the Defendants' positions are fully disclosed, and the Defendants' expert witness depositions have been taken.  Mr. Potter reserves the right to supplement these opinions based on future depositions and discovery in this case. Mr. Potter is expected to testify in accordance with his deposition, if taken.

E.      <u>Exhibits</u>: Witness may use drawings and other demonstrative exhibits to illustrate his testimony, including medical and anatomical models, illustrations, diagrams, overheads or projections of illustrations or diagrams, slides, imaging studies, and literature.

3.  **Virtaj Singh, M.D.**
    **Seattle Spine & Sports Medicine**
    **3213 Eastlake Avenue East, Suite A**
    **Seattle, WA  98102**
    **(206) 861-8200**

A.      <u>Area of Specialization, Qualifications and Compensation</u>: Dr. Singh's CV is attached as **Exhibit 9,**  his testimony history as **Exhibit 10,** and his fee schedule and fees charged in this care are attached as **Exhibit 11.** Dr. Sing is a medical doctor, who specializes in physiatry. Dr. Singh earned his medical degree from Baylor College of Medicine and completed his residency in physical medicine and rehabilitation at the University of Washington.  Following residency, he completed a fellowship in Pain Medicine at the University of Washington.  Dr. Singh's areas of specialization and qualifications are also described in his signed report, **Exhibit 12**.

B.      <u>Materials Reviewed</u>: Dr. Singh's report is attached as **Exhibit 12.** The materials he reviewed are itemized in his report.

C.      <u>Basis of Testimony</u>: Dr. Singh's opinions are based on his education, training and experience, background, knowledge of the literature, and the information listed in his signed report, **Exhibit 12**. Dr. Singh reserves the right to review any newly-produced documents.

D.      <u>Summary of Testimony</u>:  Dr. Singh's report is attached as **Exhibit 12.** All of Dr. Singh's opinions and anticipated testimony are based on a reasonable degree of medical certainty. This endorsement specifically incorporates any opinions Dr. Singh may render during his deposition, if taken.

As discovery progresses, Dr. Singh will be asked to comment and give his opinions in other areas of his specialty in which he is competent to testify, which cannot be anticipated at this time. He will also be asked to give additional rebuttal testimony when the Defendants' positions are fully disclosed, and the Defendants' expert witness depositions have been taken.  Dr. Singh reserves the right to supplement these opinions based on future depositions and discovery in this case. Dr. Singh is expected to testify in accordance with his deposition, if taken.

   E. <u>Exhibits</u>: Dr. Singh may use drawings and other demonstrative exhibits to illustrate his testimony, including medical and anatomical models, illustrations, diagrams, overheads or projections of illustrations or diagrams, slides, imaging studies, and literature. Dr. Singh may use Matthew Pilatti's medical records and films to illustrate and explain his testimony to the jury.

## II.  <u>C.R.C.P. 26(a)(2)(B)(II) DISCLOSURES</u>

   The treating physicians listed below will testify to a reasonable degree of medical probability based on their education, training, and experience, and will testify concerning their treatment of Daniel Scholle, review of his medical records and imaging studies as conducted in the course of their care of Daniel Scholle, and will testify that the charges for their treatment were reasonable and related to the conditions for which the treatment was given.

  1. **Eric A. Lung, M.D.**
    **Address 10101 RidgeGate Pkwy, Ste. 206**
    **Lone Tree, CO 80124**
    **(720) 225-1000**

   A. <u>Area of Specialization and Qualifications</u>: Dr. Lung is a board-certified physician specializing in critical care with certification from the American Board of Emergency Medicine. He completed his residency at Cooper University Hospital located in Camden, New Jersey.  Dr. Lung has been certified by the Colorado Department of Regulatory Agencies to practice medicine

in the State of Colorado since 2003. Since completing his residency, Dr. Lung has been practicing in emergency medicine.

      B.    <u>Basis of Testimony</u>: Dr. Lung's anticipated testimony will be based upon his education, training, experience, and his knowledge of his care and treatment of Matthew Pilatti, including his contemporaneous medical records. Dr. Lung reserves the right to review any newly-produced documents.

      C.    <u>Summary of Testimony</u>: Dr. Lung is expected to testify concerning his evaluation, care, and treatment of Matthew Pilatti as set forth in the medical records from Sky Ridge Medical Center. Dr. Lung is expected to testify in conformity with his medical records and deposition testimony, if taken.

It is anticipated that Dr. Lung will describe his experience as an emergency physician.

Dr. Lung will testify that he saw Mr. Pilatti on January 18, 2017 at approximately 9:23 PM. At that time, Mr. Pilatti had presented to Sky Ridge Medical Center. Dr. Lung will testify that Mr. Pilatti's chief complaint was a right ankle injury. Dr. Lung will testify that Mr. Pilatti reported slipping on ice and rolling his right ankle.

Dr. Lung will testify that on examination Mr. Pilatti had severe tenderness to touch and was unable to bear weight on his right ankle. Further, Dr. Lung will testify that Mr. Pilatti had swelling to the right ankle which made it hard for him to move his toes.

Dr. Lung will testify that ice was applied to Mr. Pilatti's right ankle and that he ordered imaging of Mr. Pilatti's right ankle.

Dr. Lung will testify that x-rays of Mr. Pilatti's right ankle showed a posterior malleolar fracture and widening of the medial mortise with tiny avulsion fracture suspected off the talus.

Further, Dr. Lung will testify that the x-ray showed no clear lateral malleolus fracture although one was suspected and a radiograph of the entire lower leg to reassess was recommended.

Dr. Lung will testify that at approximately 10:40 PM, on January 18, 2017, he discussed the x-ray results with Mr. Pilatti. Dr. Lung will testify that he recommended a long leg splint and crutches. He will testify that Mr. Pilatti indicated that he was visiting Colorado on business from Seattle and would be flying back to Seattle in two days and that he would get set up with an orthopedic surgeon upon his return to Washington.

Dr. Lung will testify that Mr. Pilatti received one tab of acetaminophen/hydrocodone Bitart at approximately 11:16 PM, on January 18, 2017, for pain.

Dr. Lung will testify that his primary impression for Mr. Pilatti was a fracture of posterior malleolus of right tibia and that his secondary impression was maisonneuve fracture of right fibula. Dr. Lung will testify that he prescribed Mr. Pilatti Norco 5mg-325mg Tablet for his pain,  Mr. Pilatti was splinted to reduce pain and pressure and to keep the injured area immobilized,  and Dr. Lung directed and Mr. Pilatti to follow up with a physician in Seattle upon his return.

Dr. Lung will testify that he was assisted by PA-C Aaron J. Van Hook-Ducker and that he approved of PA-C Van Hook-Ducker's care and treatment of Mr. Pilatti.

Dr. Lung will testify that both the care and the expense of the care he rendered and which was rendered at his direction was reasonable and necessary.

D.   Exhibits: Dr. Lung's anticipated testimony may be illustrated with Mr. Pilatti's medical records and imaging studies, as well as diagrams of the relevant anatomy, and other demonstrative aids.

Rule 26 Signature:   /s/ Matthew R. Laird
                      Matthew R. Laird, Esq.

2.  **Aaron J. Van Hook-Drucker, PA-C**

**Address 10101 RidgeGate Pkwy, Ste. 206**
**Lone Tree, CO 80124**
**(720) 225-1000**

A.    Area of Specialization and Qualifications: PA-C Van Hook-Drucker is a board-certified physician's assistant. His supervisor is Dr. Lung.  Mr. Van Hook-Drucker has been a board certified physician's assistant in Colorado since September 21, 2009.  Mr. Van Hook-Drucker specializes in emergency medicine.

E.    Basis of Testimony: Mr. Van Hook-Drucker's anticipated testimony will be based upon his education, training, experience, and his knowledge of his care and treatment of Matthew Pilatti, including his contemporaneous medical records. Mr. Van Hook-Drucker reserves the right to review any newly-produced documents.

B.    Summary of Testimony: Mr. Van Hook-Drucker is expected to testify concerning his evaluation, care, and treatment of Matthew Pilatti as set forth in the medical records from Sky Ridge Medical Center. Mr. Van Hook-Drucker is expected to testify in conformity with his medical records and deposition testimony, if taken.

It is anticipated that Mr. Van Hook-Drucker will describe his experience as physician's assistant.

Mr. Van Hook-Drucker will testify that he, along with Dr. Lung, saw Mr. Pilatti on January 18, 2017. At that time, Mr. Pilatti had presented to Sky Ridge Medical Center. Mr. Van Hook-Drucker will testify that Mr. Pilatti's chief complaint was a right ankle injury.  Mr. Van Hook-Drucker will testify that Mr. Pilatti reported slipping on ice and rolling his right ankle.

Mr. Van Hook-Drucker will testify that on physical examination Mr. Pilatti had severe tenderness to touch and was unable to bear weight on his right ankle. Further, Mr. Van Hook-

Drucker will testify that Mr. Pilatti had swelling to the right ankle which made it hard for him to move his toes.

Mr. Van Hook-Drucker will testify that at his and Dr. Lung's direction ice was applied to Mr. Pilatti's right ankle and that Dr. Lung ordered imaging of Mr. Pilatti's right ankle.

Mr. Van Hook-Drucker will testify that x-rays of Mr. Pilatti's right ankle showed a posterior malleolar fracture and widening of the medial mortise with tiny avulsion fracture suspected off the talus. Further, Mr. Van Hook-Ducker will testify that the x-ray showed no clear lateral malleolar fracture although one was suspected and a radiograph of the entire lower leg to reassess was recommended.

Mr. Van Hook-Ducker will testify that at approximately 10:40 PM on January 18, 2017, he and Dr. Lung discussed the x-ray results with Mr. Pilatti. Mr. Van Hook-Ducker will testify that they recommended a long leg splints and crutches for Mr. Pilatti. He will testify that Mr. Pilatti indicated that he was visiting Colorado on business from Seattle and would be flying back to Seattle in two days and that he would get set up with an orthopedic surgeon upon his return to Washington.

Mr. Van Hook-Ducker will testify that Mr. Pillatti received acetaminophen/hydrocodone Bitart while at Sky Ridge Medical Center.

Mr. Van Hook-Ducker will confirm that he and Dr. Lung's primary impression for Mr. Pilatti was a fracture of his posterior malleolus of right tibia and that his secondary impression was Maisonneuve fracture of his right fibula. Mr. Van Hook-Ducker will testify that Dr. Lung prescribed Mr. Pilatti Norco 5mg-325mg Tablet for his pain, Mr. Pilatti was splinted to reduce pressure, pain and to keep the injured area immobilized, and he and Dr. Lung directed Mr. Pilatti to follow up with a physician in Seattle upon his return.

Mr. Van Hook-Ducker will testify that his care and the cost of his care rendered to Mr. Pilatti was reasonable and necessary.

C.   <u>Exhibits</u>: Mr. Van Hook-Ducker's anticipated testimony may be illustrated with Mr. Pilatti's medical records and imaging studies, as well as diagrams of the relevant anatomy, and other demonstrative aids.

Rule 26 Signature:   <u>/s/ *Matthew R. Laird*   </u>
Matthew R. Laird, Esq.

3. **Robert E. Carlson, M.D.**
**122 Third Street NE**
**Auburn, WA 98002**
**(253) 833-7750**

A.   <u>Area of Specialization and Qualifications</u>: Dr. Carlson is a board certified orthopaedic surgeon.  Dr. Carlson received his Medical Doctorate from the University of Michigan School of Medicine in Ann Arbor, Michigan.  He completed a five-year Orthopaedic Surgery Residency at Northwestern University Memorial Hospital in Chicago, Illinois.  Dr. Carlson also performed an additional year of fellowship training in Foot and Ankle Surgery at Emory University in Atlanta, Georgia.  Dr. Carlson specializes in orthopaedic surgery.

F.   <u>Basis of Testimony</u>: Dr. Carlson's anticipated testimony will be based upon his education, training, experience, and his knowledge of his care and treatment of Matthew Pilatti, including his contemporaneous medical records.   See Bates Number # for Dr. Carlson's contemporaneous notes to which he will testify. Dr. Carlson reserves the right to review any newly-produced documents.

B.   <u>Summary of Testimony</u>: Dr. Carlson is expected to testify concerning his evaluation, care, and treatment of Matthew Pilatti as set forth in the medical records, from Cascade

Orthopaedics. Dr. Carlson is expected to testify in conformity with his medical records and deposition testimony, if taken.

Dr. Carlson will testify that on January 19, 2017, he evaluated Matthew Pilatti at Cascade Orthopaedics in Auburn, Washington. Dr. Carlson will testify that Mr. Pilatti's chief complaint was right ankle pain and Dr. Carlson obtained the following HPI:

```
HPI: 34-year-old male presenting today with his wife noting a slip and fall injury while
traveling for work in Colorado.  He slipped on the ice.  He was seen at a local hospital in
Denver and was told that he sustained a fracture to his fibula.  He was placed into a large
splinter presents today for evaluation of his orthopedic injury.  No other complaints are noted
other than the ankle.
```

Dr. Carlson will testify that Mr. Pilatti had been prescribed Norco for pain and discomfort related to his right ankle.

Dr. Carlson will testify that he examined Mr. Pilatti and there was generalized swelling over Mr. Pilatti's right ankle and foot, tenderness to palpation over the medial aspect of the ankle joint as well as over the ankle in general extending up to the right proximal fibula. Dr. Carlson will testify that he could only do a limited exam due to the tenderness at Mr. Pilatti's ankle and that Mr. Pilatti was nonambulatory on the right leg and using crutches.

Dr. Carlson will testify that he reviewed Mr. Pilatti's x-rays of his right ankle which showed signs of a nondisplaced proximal fibula with widening of the ankle joint-medial joint space, subluxation of the talus.

Dr. Carlson will testify that based upon his examination of Mr. Pilatti and his review of imaging of Mr. Pilatti's ankle, he gave Mr. Pilatti the following diagnosis:

```
Diagnosis: Syndesmosis rupture right ankle with nondisplaced proximal fibular fracture.
```

Dr. Carlson will testify that based upon his assessment of Mr. Pilatti, including both his physical assessment and assessment of Mr. Pilatti's imaging, he gave the following

recommendations, which he will confirm were both reasonable and necessary, for the care and treatment of Mr. Pilatti's fractured right ankle:

**Recommendations:** Unstable ankle and ligament injury to the tibia and fibula described to the patient in detail requiring surgical treatment.  Treatment with stabilization of the syndesmosis requires 3 months of relative non weight bearing for healing of the syndesmosis. Risks and benefits discussed in detail which include but are not limited to bleeding infection. He like to proceed with surgery as outlined.  These can go to the process of talking to his human resource Department regarding the issue of work injury as documented.

Dr. Carlson will testify that on January 25, 2017, he performed "#1 ORIF right syndesmosis rupture," (CPT Code: 27829, 27695). He will testify that his preoperative diagnosis was "right ankle syndesmosis rupture with proximal fibula fracture" and his postoperative diagnosis was the same "with ruptured deltoid ligament, incarcerated requiring open repair," (ICD: S82.831A, S93.01XA, S93.421A). He will testify that he was assisted by Luiz Lozano, PA-C, whose assistance was reasonable and necessary given the procedure performed.  Dr. Carlson will describe this procedure as detailed in his operative report.  He will testify that the procedure was performed under general anesthesia and that additional surgical assistance was required for the exposure and reduction portion of the surgical case.  Further, Dr. Carlson will testify that he used intraoperative fluoroscopy, which was reasonable and necessary given Mr. Pilatti's condition, and that there was compression of Mr. Pilatti's right medial joint space which remained widened and was indicative of incarceration of his deltoid ligament and a faint, small linear density was also observed in Mr. Pilatti's medial joint space.  So, Dr. Carlson made the decision, which he will confirm was reasonable and necessary, to open Mr. Pilatti's medial ankle and explore the deltoid.

Dr. Carlson will testify that upon inspection of Mr. Pilatti's right medial ankle and exploration of his deltoid, Mr. Pilatti's retinaculum was obviously torn and he had a shredded intra-substance tear of the deltoid tissues.  Dr. Carlson will testify that he re-reduced the syndesmosis and restored the tibia/fibula relationship and reduced the talus in Mr. Pilatti's ankle.

Dr. Carlson will then testify as to the ORIF he performed, including a description of the hardware used, and the reasonableness and necessity of the procedure.

Dr. Carlson will testify that he saw Mr. Pilatti postoperatively on February 6, 2017 for a postoperative evaluation.  He will testify that Mr. Pilatti was doing "reasonably well at this early visit."  He will testify that there was some swelling and mild ecchymosis throughout Mr. Pilatti's right ankle and foot without any gross signs of infection.  Dr. Carlson will testify that his diagnosis remained "right ankle syndesmosis rupture with deltoid rupture."  He will testify that he gave Mr. Pilatti some light exercises to work on but that Mr. Pilatti was to essentially remain non-weight bearing on his right ankle for the next two months, take pain medication as needed, and to follow-up with him for re-evaluation in 4-5 weeks.

Dr. Carlson will testify that he saw Mr. Pilatti on March 13, 2017 for a postoperative evaluation.  He will testify that Mr. Pilatti presented post ORIF sundesmosis and deltoid ligament repair right ankle, Mr. Pilatti was progressing well, and Mr. Pilatti was still non-weight bearing status with a cast boot and crutches. He will testify that his inspection of Mr. Pilatti's ankle revealed intact surgical scars, no signs of infection, and gross anatomic alignment of his right ankle with supple active and passive motion.   Dr. Carlson will testify that his diagnosis for Mr. Pilatti remained right ankle syndesmosis rupture with deltoid ligament avulsion.  Dr. Carlson will testify that 3 views of Mr. Pilatti's right ankle were taken at Cascade Orthopedics which showed well aligned syndesmosis hardware, congruent ankle joint, and a nondisplaced posterior malleolus fracture of the tibia.  Dr. Carlson will testify that his was plan for Mr. Pilatti's care was as follows:

**Plan:** I reviewed the x-rays the patient is wife and I'm recommending follow-up in a month and it that time we'll schedule him for staged hardware removal of the syndesmosis screw.  I returned him to work modified duty beginning this Wednesday.  Continue flat foot non-weight bearing status with crutches and cast boot

Dr. Carlson will testify he saw Mr. Pilatti on April 17, 2017 for a postoperative visit. He will testify that Mr. Pilatti's status was post-surgical treatment for right ankle syndesmosis

rupture with deltoid ligament avulsion and post-repair of the his deltoid ligament and stabilization of the syndesmosis. Dr. Carlson will testify that he recommended stage hardware removal of the syndesmosis screw surgery for later in April based on Mr. Pilatti's 3-month recovery status. He will further testify that inspection of Mr. Pilatti's right ankle revealed some mild swelling, mild tenderness to deep palpation over the ankle joint both medial and lateral, and well healed surgical scars. Dr. Carlson will testify that his diagnosis for Mr. Pilatti remained right syndesmosis rupture, deltoid ligament avulsion. Dr. Carlson will testify that his plan for Mr. Pilatti's care was as follows:

**Plan:** Risks and benefits of staged hardware removal discussed. Follow-up in the surgery Center as scheduled. More progressive recovery following removal of the screw described to the patient. This will still take about 6 weeks.

Dr. Carlson will testify that on April 19, 2017, he operated on Mr. Pilatti. Dr. Carlson will testify that he performed a deep hardware removal-syndesmosis screw right ankle procedure on Mr. Pilatti, CPT Code 20680, 73610. He will testify that his pre and postoperative diagnosis was right ankle deep, retained hardware-syndesmosis screw, ICD-10:T84.84XA. Dr. Carslon will testify the indications were as follows:

**Indications:** Adult male with history of deltoid avulsion ankle fracture and syndesmosis rupture presenting today for elective removal of the syndesmosis screw to allow for progression of mobilization and weight bearing

Dr. Carlson will testify that the procedure was performed under general anesthesia. He will testify as to the procedure performed as well as the surgical equipment utilized, including a screwdriver to remove the implanted screw. He will also testify that imaging of Mr. Pilatti's right ankle was performed and that this was reasonable and necessary given the procedure and Mr. Pilatti's condition.

Dr. Carlson will testify that on April 27, 2017, he saw Mr. Pilatti. He will testify that Mr. Pilatti presented to him for a postoperative follow-up evaluation of his right ankle post

syndesmosis screw removal and that Mr. Pilatti was also status post ORIF of a deltoid ligament avulsion fracture.  He will testify that Mr. Pilatti stated that his ankle felt better but was stiff.  Dr. Carlson will testify that Mr. Pilatti had an intact surgical scar over his right ankle, his medial ankle also had an intact scar, there was minimal swelling in his right ankle and foot, and there was supple active motion but stiffness compared to Mr. Pilatti's left foot and ankle. Dr. Carlson will testify that his diagnosis for Mr. Pilatti was right deltoid ligament avulsion fracture status post repair right syndesmosis rupture ankle status post ORIF.  He will testify that given Mr. Pilatti's condition, his plan of care was to be as follows:

```
Plan: I've ordered and dispensed an ASO brace for the patient to use as directed and I given
him some stretching exercises to work on.  I've also provided a physical therapy referral.
Follow-up in 6 weeks allowing increased modified duty at this point.  APF update
```

Dr. Carlson will testify that on June 8, 2017, he saw Mr. Pilatti.  Dr. Carlson will testify that this was a follow-up evaluation post ORIF of a right syndesmosis injury with deltoid toward ligament disruption and repair and syndesmosis screw removal.  He will testify that Mr. Pilatti's biggest point was still stiffness of the ankle, which although he had not performed physical therapy yet he has been trying to address through home exercises.  Dr. Carlson will testify that there was mild swelling in Mr. Pilatti's right ankle and foot, Mr. Pilatti ambulated with an antalgic gait, and Mr. Pilatti had restriction of "dorsiflexion actively-about 5° compared to almost 15 ° on the left side." Dr. Carlson will testify that his diagnosis for Mr. Pilatti remained right ankle syndesmosis rupture with deltoid ligament rupture.  He will further testify that his plan was as follows:

```
Plan: I discussed the patient I do think it might be worth his while to attend formal physical
therapy. I reviewed the stretches I want him to work on.  Some of his residual symptoms at this
point fit with the severity of his soft tissue injury and stage of recovery. APF updated.
```

Dr. Carlson will testify that he evaluated Mr. Pilatti on December 12, 2017.  Dr. Carlso will testify that at that time his diagnosis for Mr. Pilatti was a right ankle syndesmosis rupture.  He will testify that one valuation, Mr. Pilatti had tenderness to deep palpation in his right ankle.  He

will testify that he concluded Mr. Pilatti could sit without restriction at this job assuming the sitting was constant (67-100% of the time).  Further, he will testify that he recommended Mr. Pilatti be allowed to work from home and that Mr. Pilatti had progressed as expected/better than expected and that he was to continue with his home exercises with further visits to occur in 6-8 weeks.  Dr. Carlson will testify that he made no findings as to the amount of time that Mr. Pilatti could stand/walk, perform work from a ladder, climb ladder, climb stairs, bend/stoop, squat/kneel, crawl, or reach.

Dr. Carlson will testify that his care and treatment were both reasonable and necessary given Mr. Pilatti's condition.  Further, Dr. Carlson will testify that his charges for his and his office's services were likewise reasonable and necessary.

D.      Exhibits: Dr. Carlson's anticipated testimony may be illustrated with Mr. Pilatti's medical records and imaging studies, as well as diagrams of the relevant anatomy, and other demonstrative aids.

Rule 26 Signature:      /s/ Matthew R. Laird
                        Matthew R. Laird, Esq.

4.   **Bradley R. Harvie, MSPT**
     **Advance Physical Therapy of Orting, Inc.**
     **208 Corrin Avenue SW**
     **Orting, WA 98390**
     **(360) 872-0401**

A.      Area of Specialization and Qualifications: Mr. Harvie is a credentialed and licensed physical therapy specialist.  He has a Master's of Science in Physical Therapy (MSPT), which he obtained in 1993. He has been involved in providing physical therapy since 1993.

G.      Basis of Testimony: Mr. Harvie's anticipated testimony will be based upon his education, training, experience, and his knowledge of his care and treatment of Matthew Pilatti, including his contemporaneous medical records from Advanced Physical Therapy of Orting, Inc.,

for Mr. Harvie's contemporaneous notes to which he will testify in conformity. Mr. Harvie reserves the right to review any newly-produced documents.

Mr. Harvie will testify that he evaluated Mr. Pilatti on June 28, 2017. He will testify that Mr. Pilatti had been referred to him for physical therapy by Dr. Robert Carlson and that his diagnosis was "S/P R Syndesmosis Rupture, ORIF." He will testify that the following is the history he obtained for Mr. Pilatti:

HISTORY: Pt reports that he initially injured his R ankle when he slipped on ice while leaving a work meeting in Colorado. He reports that he fractured his ankle, and had surgery for ORIF on 1-21-17. He states he had the hardware removed 8 weeks ago, and that he has been very stiff and sore. He is referred to Physical Therapy to help restore mobility and function.

He will testify that Mr. Pilatti's prior level of activity was active without limitation. Further he will testify that Mr. Pilatti's problems were as follows:

The patient's problems are as follows:
1. Painful ankle: 2/10 baseline and 6/10 maximum, intermittent as rated by the patient.
2. Edematous ankle: Bimalleolar Circumference Right 27.6cm    Left 25.1cm.
3. Decreased AROM: Dorsiflexion/Plantar flexion Right 6/43°
                                  Inversion/Eversion Right 7/7°
4. Scar/Point tenderness on and about the medial and lateral ankle.
5. Decreased strength: Tib Ant 4-/5  Tib Post 4-/5  Gastroc/Sol 4/5  Peroneals 4-/5
6. Impaired ambulation, with dec stance time, step length and push-off of the R LE, difficulty negotiating uneven terrain.
7. Inability to take part in regular ADL's. leisure activities.

Mr. Harvie will testify that Mr. Pilatti's rehab potential was good and that he would require rehabilitation 1 to 2 times a week for 4 weeks. He will testify that the short-term goals of treatment for Mr. Pilatti included a decrease in pain to 3/10 maximum, intermittent; a decrease in edema 1.0 cm in circumference; an increase in active range of motion to 6%; a decrease in scar/point tenderness of 50%; an increase in strength a half grade on MMT; and for Mr. Pilatti to be independent in HEP. He will testify that the long-term goals of physical therapy for Mr. Pilatti were as follows: to resolve pain; to decrease edema to .0 cm in circumference; increase active

range of motion to 10°;  decrease car/point tenderness to 90%; increase strength one full grade on MMT;  and to return to normal ambulation and function.

Further, Mr. Harvie will testify that the treatment plan  included hot and cold packs, ultrasound, electrical stimulation, IFC,  massage, AROM, PROM,  therapeutic exercises, joint mobilization, stretching, transfer  training, balance  training, gait  training, general coordinating,  proprioceptive training, and HEP.

Mr. Harvie will testify that Mr. Pilatti presented to Advance Physical Therapy of Orting, Inc.  and received physical therapy in conformity with the contemporaneous physical therapy notes on the following days:

- 6/30/17: electrical stimulation, therapeutic exercise, and manual therapy (CPT:  97014, 97110, 97140)
- 7/6/17: electrical stimulation, therapeutic exercise, and manual therapy (CPT:  97014, 97110, 97140)
- 7/7/17: electrical stimulation, therapeutic exercise, and manual therapy (CPT:  97014, 97110, 97140)
- 7/12/17: electrical stimulation, therapeutic exercise, and manual therapy (CPT:  97014, 97110, 97140)
- 7/14/17: electrical stimulation, therapeutic exercise, and manual therapy (CPT:  97014, 97110, 97140)
- 7/19/17: electrical stimulation, therapeutic exercise, and manual therapy (CPT:  97014, 97110, 97140)
- 7/24/17: electrical stimulation, therapeutic exercise, and manual therapy (CPT:  97014, 97110, 97140)
- 7/28/17: electrical stimulation, therapeutic exercise, and manual therapy (CPT:  97014, 97110, 97140)
- 8/2/17: electrical stimulation, therapeutic exercise, and manual therapy (CPT:  97014, 97110, 97140)
- 8/4/17: electrical stimulation, therapeutic exercise, and manual therapy (CPT:  97014, 97110, 97140)

Mr. Harvie will testify that on August 9, 2017, he performed a physical therapy re-evaluation  on Mr. Pilatti. He will testify that Mr. Pilatti stated that his pain and mobility were much better, but that he is still having problems with on level ground, and is anxious about

resuming more vigorous activities. Mr. Harvie will testify that Mr. Pilatti's problems were as follows:

**The patient's problems are as follows:**
1. Painful ankle: dec to 4-5/10 maximum, intermittent as rated by the patient.
2. Edematous ankle: Bimalleolar Circumference Right 26.3cm(dec 1.3cm)   Left 25.1cm.
3. Decreased AROM: Dorsiflexion/Plantar flexion Right 11/53° (inc 15deg)
                   Inversion/Eversion Right 13/9° (inc 8deg)
4. Scar/Point tenderness on and about the medial and lateral ankle.
5. Decreased strength: Tib Ant 4+/5  Tib Post 4-/5  Gastroc/Sol 4+/5  Peroneals 4-/5
6. Impaired ambulation, with dec stance time, step length and push-off of the R LE, continued difficulty negotiating unevel terrain.
7. Difficulty with regular ADL's. leisure activities.

Mr. Harvie will testify that the short-term (3 weeks) goals of treatment for Mr. Pilatti were as follows: a decrease in pain to 3/10 maximum, intermittent;  a decrease in edema to 1.0 cm in circumference; an increase in active range of motion to 6°; a decrease in scar/point tenderness to 50%; an increase in strength by ½ grade on MMT;  and Mr. Pilatti to be independent in HEP.   Mr. Harvie will testify that the long-term goals (6 weeks) for Mr. Pilatti's therapy were as follows: resolve pain; decrease in edema 2.0 cm in circumference; an increase in active range of motion to 10°; a decrease in scar/point tenderness to 90%; an increase in strength one full grade on MMT;  and for Mr. Pilatti to return to normal ambulation and function. Mr. Harvie will testify that on re-evaluation Mr. Pilatti's rehabilitation potential was good and that he would need therapy 2 times a week for 4 weeks. He will testify that Mr. Pilatti was making nice progress overall, but he still has significant deficits in his strength and mobility which he would focus on moving forward.

Mr. Harvie will testify that Mr. Pilatti presented to Advance Physical Therapy of Orting, Inc. and received physical therapy in conformity with the contemporaneous physical therapy notes on the following days:

- 8/9/17: electrical stimulation, joint mobilization, and therapeutic exercise (CPT: 97014, 97110, 97140)
- 8/11/17: electrical stimulation, joint mobilization, and therapeutic exercise (CPT: 97014, 97110, 97140)

- 8/14/17: electrical stimulation, joint mobilization, and therapeutic exercise (CPT: 97014, 97110, 97140)
- 8/18/17: electrical stimulation, joint mobilization, and therapeutic exercise (CPT: 97014, 97110, 97140)
- 8/24/17: electrical stimulation, joint mobilization, and therapeutic exercise (CPT: 97014, 97110, 97140)
- 8/25/17: electrical stimulation, joint mobilization, and therapeutic exercise (CPT: 97014, 97110, 97140)
- 8/28/17: electrical stimulation, joint mobilization, and therapeutic exercise (CPT: 97014, 97110, 97140)
- 8/29/17: electrical stimulation, joint mobilization, and therapeutic exercise (CPT: 97014, 97110, 97140)
- 8/30/17: electrical stimulation, joint mobilization, and therapeutic exercise (CPT: 97014, 97110, 97140)
- 9/6/17: electrical stimulation, joint mobilization, and therapeutic exercise (CPT: 97014, 97110, 97140)
- 9/8/17: electrical stimulation, joint mobilization, and therapeutic exercise (CPT: 97014, 97110, 97140)
- 9/13/17: electrical stimulation, joint mobilization, and therapeutic exercise (CPT: 97014, 97110, 97140)
- 9/15/17: electrical stimulation, joint mobilization, and therapeutic exercise (CPT: 97014, 97110, 97140)
- 10/6/17: electrical stimulation, joint mobilization, and therapeutic exercise (CPT: 97014, 97110, 97140)
- 10/10/17: electrical stimulation, joint mobilization, and therapeutic exercise (CPT: 97014, 97110, 97140)
- 10/11/17: electrical stimulation, joint mobilization, and therapeutic exercise (CPT: 97014, 97110, 97140)
- 10/13/17: electrical stimulation, joint mobilization, and therapeutic exercise (CPT: 97014, 97110, 97140)
- 10/17/17: electrical stimulation, joint mobilization, and therapeutic exercise (CPT: 97014, 97110, 97140)
- 10/20/17: electrical stimulation, joint mobilization, and therapeutic exercise (CPT: 97014, 97110, 97140)
- 10/25/17: electrical stimulation, joint mobilization, and therapeutic exercise (CPT: 97014, 97110, 97140)

Mr. Harvie will testify that the care and treatment provided to Mr. Pilatti and the amount billed for his and his offices' care and treatment were both reasonable and necessary.

275ccf0f44d7c5c6

C.      <u>Summary of Testimony</u>: Mr. Harvie is expected to testify concerning his evaluation, care, and treatment of Matthew Pilatti as set forth in the medical records. Mr. Harvie will testify in conformity with his medical records and deposition testimony, if taken.

D.      <u>Exhibits</u>: Mr. Harvie's anticipated testimony may be illustrated with Mr. Pilatti's medical records and imaging studies, as well as diagrams of the relevant anatomy, and other demonstrative aids.

Rule 26 Signature:      <u>*/s/ Matthew R. Laird*</u>
                                   Matthew R. Laird, Esq.

DATED this 16th day of July, 2018.

<u>*s/ Matthew R. Laird*</u>
Isobel S. Thomas
Matthew R. Laird
THOMAS KEEL & LAIRD, LLC
50 South Steele Street, Suite 450
Denver, Colorado 80209
Telephone:   (303) 372-6130
Facsimile:    (303) 845-9821
ithomas@thomaskeel.com
mlaird@thomaskeel.com

-and-

Michael D. Myers
Samantha Lin
MYERS & COMPANY PLLC
1530 Eastlake Avenue East
Seattle, Washington 98102
Telephone:      (206) 398-1188
mmyers@myers-company.com
slin@myers-company.com
*Attorneys for the Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that on July 16, 2018, the foregoing was served on the following parties via email:

Katy Brim
Scott Lasater
LASATER & MARTIN. PC
8822 South Ridgeline Blvd. Suite 450
Highlands Ranch, Colorado 80129
scott@lasaterandmartin.com
brim@lasaterandmartin.com

Michael Myers and Samantha Lin
MYERS & COMPANY PLLC
1530 Eastlake Avenue East
Seattle, Washington 98102
Telephone:      (206) 398-1188
mmyers@myers-company.com
slin@myers-company.com

David M. Bost
Estelle Galperin
OVERTURF MCGATH & HULL, PC
635 E 16th Avenue
Denver, Colorado 80203
Telephone:      (303) 860-2848
dmb@omhlaw.com
eg@omhlaw.com

s/ Matthew R. Laird
Isobel S. Thomas
Matthew R. Laird
THOMAS KEEL & LAIRD, LLC
50 South Steele Street, Suite 450
Denver, Colorado 80209
Telephone:   (303) 372-6130
Facsimile:    (303) 845-9821
ithomas@thomaskeel.com
mlaird@thomaskeel.com