July 16, 2018

Jeremy E. Swenson, CSP
Swenson Consulting
11940 Cartwright Avenue, Suite 300
Grandview, MO  64030

Myers & Company
Attn:  Samantha Lin
1530 Eastlake Avenue East
Seattle, Washington 98102

Dear Samantha:

This report has been generated to forward snow and ice expert observations, conclusions and
opinions related to a slip and fall incident that occurred January 18th, 2017 at the Hacienda,
Colorado located at 10500 Bierstadt Way, Englewood, CO  80112.  These observations,
conclusions, and opinions have been developed by reviewing case documents and files that were
provided by Samantha Lin in the Matthew Pilatti v. Hacienda II Partners, LLLP and Emerald Isle
Landscaping, Inc. case.  The case is located in the United States District Court for the District of
Colorado.  Civil Action No.  17-cv-01307-MEH.

### Introduction:

My name is Jeremy Swenson, and I have been retained by Myers & Company on behalf of
Matthew Pilatti.  I have been asked to review case documents and to opine on the snow and ice
removal services that were provided by Hacienda II Partners, LLLP.  I have also been asked to
review the snow and ice removal plans, policies, and procedures used by Hacienda II Partners,
LLLP, and to review pictures of the area where the incident occurred.  I will address "industry
standard of care" for snow and ice removal as it relates to Hacienda II Partners, LLLP, and the
snow and ice removal services that were provided in relationship to the industry at large.

This report is not intended to be exhaustive in that a detailed examination of this property and all
the information in this case has recently been initiated.  This report should be considered to be

EXHIBIT
D

subject to supplementation or future revisions if additional information becomes available. This document will not discuss the minutia of the case but will generally address key issues related to the case as they are known at this time.

### Qualifications:

I currently work full time in the snow and ice removal industry, as a Certified Snow Professional "CSP" with over 25 years of experience. As of 2018 there were less than 225 "CSP's" in the US and Canada. To become a "CSP" I passed a three-hour exam that focused on: proficient knowledge of business, snow and ice science, sub-contractors, snow and ice operations, and techniques of the snow removal industry. I am actively involved with SIMA, the "Snow and Ice Management Association", which has the largest membership of snow and ice owners and contractors in the US and Canada. I have served on the SIMA "Advanced Contract Clauses" national committee in 2017 and on the national 2018 SIMA "Best Practices Committee", which focuses its efforts on setting national industry standards for snow and ice removal contractors all across the United States. I own Snowmen Inc., which contracts with 500+ commercial properties in the average winter season. I have managed and overseen snow and ice operations on over 10,000 acres of parking lot pavement, and over 28,000,000 square feet of sidewalk walking area in my career.

I personally prepare over 1,500 snow and ice removal contracts per winter season and am an expert on snow and ice removal contract analysis and preparation. I have assisted hundreds of property managers and owners of commercial properties with setting the industry standard of care for snow and ice removal on their properties, and I have overseen snow and ice removal operations at hundreds of commercial properties similar to the Hacienda Colorado restaurant over the last 25 years. I am familiar with the snow and ice removal industry standard of care that is used at retail commercial buildings in the industry. Please note that the conclusions and opinions presented in this report are based on my education, experience, and the standards of practice for the snow and ice removal industry and represent valid conclusions and opinions to a reasonable degree of certainty. Additional experience and qualifications can be found in my CV, which is attached to this report.

**Observations, Authorities & Facts:**

1. The WeatherWorks weather report shows that on January 15, 2017 it snowed approximately .1 to .3 inches around Englewood, CO during the 24-hour period. On January 16th, 2017 an additional 3.9 to 5.2 inches of snow fell and temperatures ranged from the mid to upper 20's to an afternoon high of 32-33 degrees. On January 17th, 2017 there were around 3.0 to 4.0 inches of snow on exposed, undisturbed, and untreated ground surfaces. Temperatures warmed to 46-47 degrees during the daytime, and then cooled back into the mid-to-upper 20s towards midnight. On January 18th, 2017 there were around 1.0 to 2.0 inches of snow on exposed, undisturbed, and untreated ground surfaces. Temperatures raised to a high of 52-54 degrees in the afternoon and then began to drop through the afternoon to freezing by 9-10PM. Around the time of the slip and fall incident, 9PM, the weather was mainly clear with a temperature of 32-33 degrees. Exposed, undisturbed, and untreated ground surfaces were covered with approximately a trace to 1.0 inch of any naturally precipitated snow and ice from the January 15-16[th], 2017 winter storm. (WeatherWorks weather report dated April 16, 2018).

2. Hacienda II Partners, LLP had a written snow clearance agreement with Emerald Isle Landscaping, Inc. in January of 2017 to provide snow clearing and ice remediation services for the Hacienda Colorado restaurant located at 10500 Bierstadt Way, Englewood, CO  80112. The agreement states that Emerald Isle Landscaping, Inc. will come out and provide snow plowing services in the Hacienda Colorado restaurant parking lot area automatically if it snowed 2" or more. Ice Slicer was to be applied to the parking lot area with a minimum of 1 ton as per the snow clearance agreement. The snow clearance agreement dated 12/6/2016 has snow plowing and Ice Slicer services checked and initialed for the Hacienda Colorado restaurant. Hacienda II Partners, LLP made the decision to use its own employees and managers to provide sidewalk shoveling and de-icing services at the Hacienda Colorado restaurant in January of 2017 if the snow amounts were under 2" as per the snow clearance agreement. Kelly Maloney is the director of human resources for Hacienda II Partners, LLP and states that Emerald Isle Landscaping only provides ice-slicing if needed, but feels that it is rarely necessary.

Kelly Maloney states that Hacienda opted out of Emerald Isle performing ongoing snow and ice mitigation for the parking lot in the snow clearance agreement. Kelly Maloney states in her deposition that they only had the need for Emerald Isle Landscaping to visit their property one time in January of 2017 based on the weather conditions, and that visit was on January 5th, 2017. She states that they do not keep weather logs, task logs, shovel logs, or ice melt logs. She goes on to state that if there was a need for snow removal in the parking lot that it would be conducted by Emerald Isle Landscaping. She states that the Hacienda restaurant managers have the ability to call Emerald Isle Landscaping for snow or ice removal services if needed. (Emerald Isle Landscaping Snow Clearance Agreement dated 12/6/2016, Kelly Maloney Deposition – pages 9, 15-16, 181-188, 207-212).

3. Kelly Maloney states that Hacienda II Partners has protocols for snow and ice control at the Hacienda Colorado restaurant, but that there are no written policies, plans, or procedures for snow and ice removal. She states that the snow and ice removal is usually provided by the bussers at the restaurant, but that there are no records that they keep documenting the snow and ice removal services that are provided. Kelly states that Hacienda's verbal snow and ice policies and procedures were originally developed by the two majority owners of the restaurant in 1998. Kelly believes that Hacienda's snow and ice mitigation protocols and procedures are reasonable and at least comparable to beyond comparable to any public access in parking lots, shopping centers, or grocery stores. She says they are very successful in their structure and processes and that they meet any common or public area standards based on her personal experience. (Kelly Maloney deposition – pages 15-28, pages 41-42, pages 157-158, page 166.).

4. Kelly Maloney states in her deposition that in regards to monitoring the parking lot that employees, typically bussers, would survey the parking lot, and if there was an issue they would make the managers aware of it. There is no documentation kept or recorded by managers or employees regarding the inspections or the monitoring process. She states that there is no specific person in charge of monitoring the weather or temperature outside, but it is the responsibility of every staff manager on duty. Employees make

assessments regarding safe conditions and that snow and ice removal work is done "as needed" with no written policies or procedures in place. When Kelly was asked if Hacienda has any policy requiring employees to check if melting snow was causing ice to form on parking lot surfaces she replied that they have an informal policy asking them to be observant and communicate any issues of concern that they may see either in the building or exterior. She didn't think that when the sun set on January 18th, 2017 was relevant to determining whether or not there was ice in the parking lot and did not believe that there was ice in the parking lot on January 18, 2017 based on the temperatures. Kelly stated that if a patch of ice was discovered by an employee of Hacienda Colorado restaurant in the parking lot that they would put ice melt on it if it was a patch not larger than a car. (Kelly Maloney deposition – pages 79-81, page 122, page, pages 126-128, page 131, page 227, page 232).

5.   Kelly Moloney states in her deposition that the Hacienda Colorado restaurant has an online log that the managers use to record important shift information daily. This information is used to communicate between managers and record import operating information for the restaurant. She states that if there is inclement weather, it is often noted because it impacts sales and it impacts staffing. She states that the logs might note if Emerald Isle was called out to service the restaurant, and that they do not make notes every shift unless there is something of note. The Daily Logbook Report for Hacienda Colorado – Lone Tree for Monday January 16, 2017 states "Cut heavy today due to snow. Down to 9 servers then Josh no showed." (Kelly Moloney deposition – pages 33-39, Hacienda Colorado – Lone Tree Daily Log Book – January 10-18, 2017).

6.   Jacques Gasnier was a manager at Hacienda Colorado in January of 2017 and stated that he had no official training in snow and ice removal, and that he received no training in snow removal and ice remediation from Hacienda Colorado, but did receive kitchen training, along with food and alcohol training when he became a manager. He states that responsibilities as a manager in regards to snow and ice removal at Hacienda Colorado were to look at the walkways and make sure that the area is clear. The parking lot is big, so managers don't typically spend a lot of time walking up and down the parking lot, but

they did look out there. Jacques states that there was no one at Hacienda who managed or would try to monitor the weather that he could think of, and that if it was not snowing busboys would be checking for debris as needed. There was not a set schedule or log that was kept. (Jacques Gasnier deposition – Page 6, 9-10, 34, 36, 37-39).

7. Kelly Maloney states that she does not know what type of ice melt they use at Hacienda Colorado for ice mitigation, only that she has been told that it's very effective. She states that she is not an ice melt expert and has no policies or procedures regarding the application rates for deicers, and does not keep a log of what was used. She states that the amount to apply is on the bag. Jacques Gasnier states in his deposition that he did not know what kind of deicer was used at Hacienda Colorado and he doesn't know what the refreezing temperatures are with the deicer that was used. He states that he has not seen any policies from Hacienda Colorado regarding how to use deicer and that there were no policies, plans or procedures in writing. His personal policy and procedure was to apply generously. (Kelly Maloney deposition – pages 213-218, Jacques Gasnier deposition – Pages 41-42).

8. Apolinar Meza worked as a busser at Hacienda Colorado in January of 2017 and was working the day of the slip and fall incident. He states that his responsibility at the restaurant if it snows is to clean the entryways, walkways, and handicapped areas in the parking lot. In regards to the rest of the parking lot, he states that it was not the employee's responsibility in regards to snow and ice removal. He states that he does not know the brand of ice melt that he was using, it was just provided it for him and he uses it and applies it. No one told him how much to use, he just puts ice melt on the ice. Apolinar states that if there is snow on the grass he has nothing to do with that. He picks up trash from the parking lot and states that if there is no snow there is no need to go out to the parking lot. He states that he is not aware of any policies at Hacienda Colorado regarding monitoring the parking lot at the Lone Tree location. When he is asked if he received any training on how to look for snow or ice, or where ice may develop in the parking lot, he states that he does not get involved with the parking lot. (Apolinar Meza deposition – Pages 6-11, 14, 15-16, 18, 23, 24-25).

9. Theresa Miller worked at Hacienda Colorado as a manager in January of 2017 and states that she did not receive any training on snow and ice removal, and there were no policies in regards to snow and ice removal. She states that in the parking lot the employees and managers do not service snow and ice and they don't do the parking lot. She states that there wasn't a set schedule for bussers to go out, walk around, and look for snow and ice. She states that no one would direct the bussers to look for snow and ice. Theresa states that she doesn't know what type of ice melt they used, or what chemical it was. (Theresa Miller deposition – Pages 6-9, 32-34, 35, 37-39).

10. Hulk Sanchez was a manager at Hacienda Colorado in January of 2017 and states that all managers had the ability to contact the landscaper to come out and clean the parking lot. He states that if they didn't come, then it was Hacienda's responsibility to ask them to come if they felt that it was necessary. Hulk states that when there were less than 2" of snow in the Hacienda Colorado parking lot that they would look at the parking lot and just make sure that it wasn't posing any sort of threat. He states that in the winter when monitoring the parking lot if he had noticed a patch of ice he would have someone throw ice melt on it. Hulk states that there was never any direction given in terms of how much ice melt to apply to ice in the parking lot, just to cover it and make sure that there was enough to melt it. (Hulk Sanchez deposition – pages 5, 18-21, 26, 28, 31).

11. Matthew Pilatti states in his deposition that he saw snow in the grassy areas the evening he slipped and fell, but he doesn't remember seeing any ice in the parking lot. He states that he did not observe any salt or sand in the parking lot the day of the slip and fall, and that after falling and sitting on the ground he noticed that there was ice beneath him. (Matthew Pilatti deposition – Pages 31-32, 157, 160).

12. ASTM F2966-13 Standard Guide for Snow and Ice Control for Walkway Surfaces is a standard published by the American Society for Testing and Materials. It is a national Snow and Ice removal industry standard and SIMA, the Snow and Ice Management Association recommends that operations in a snow and ice management plan comply

with this national standard.  SIMA is the largest snow and ice association in the United States and Canada with over 20,000 members consisting of building owners, snow contractors, and property managers.  ASTM F2966-13 covers snow and ice control procedures that are used in the snow and ice removal industry.  The standard states known methods to bring about reasonably safe parking lots and walkway surfaces where snow and ice may impact the safety of pedestrians.  It is used by property owners, property managers, and snow and ice contractors in the industry.

13. ASTM F2966-13 Section 3.2.1 states: "Anti-icing materials, n-dry or liquid snow and ice control materials applied before a snow and ice event intended to prevent precipitation from bonding (that is, freezing) with the pavement, or weaken bonds formed for easier removal." (ASTM F2966-13).

14. ASTM F2966-13 Section 3.2.2 states: "De-icing materials, n-snow and ice melting products applied on top of a layer of snow or ice, or both, that is bonded to the pavement. 3.2.2.1 Discussion – Can also be applied proactively during, or after plowing or snow and ice removal". (ASTM F2966-13).

15. ASTM F2966-13 Section 5.1.1 states: "Control techniques for exterior walkway surfaces include anti-icing, plowing, snow blowing, shoveling, de-icing, and/or applying sand or other abrasives." (ASTM F2966-13).

16. ASTM F2966-13 Section 5.1.2 states: "Reasonable effort should be made to ensure exterior walkway surface safety for pedestrian traffic". (ASTM F2966-13).

17. ASTM F2966-13 Section 5.1.3 states: "A combination of preparatory and ongoing snow and ice control methods should be employed, as applicable." (ASTM F2966-13).

18. ASTM F2966-13 Section 5.1.7 states: "Walkway surfaces should be monitored and treated for refreezing." (ASTM F2966-13).

19. ASTM F2966-13 Section 5.2.1 states: "Plans for snow and ice control should be in writing.  Procedures should be prioritized based on volume and type of pedestrian traffic." (ASTM F2966-13).

## **Opinions and Conclusions:**

1.  All of my opinions and conclusions set forth in this report are stated to a reasonable degree of probability and/or certainty.  It is also my opinion that all of the instances and circumstances I identify in this report where Hacienda II Partners, LLLP unreasonably failed to exercise reasonable care more likely than not caused the slip and fall incident on a dangerous condition (snow and ice) that injured Matthew Pilatti.

2.  *The WeatherWorks weather report shows that on January 15, 2017 it snowed approximately .1 to .3 inches around Englewood, CO during the 24-hour period.  On January 16th, 2017 an additional 3.9 to 5.2 inches of snow fell and temperatures ranged from the mid to upper 20's to an afternoon high of 32-33 degrees.  On January 17th, 2017 there were around 3.0 to 4.0 inches of snow on exposed, undisturbed, and untreated ground surfaces.  Temperatures warmed to 46-47 degrees during the daytime, and then cooled back into the mid-to-upper 20s towards midnight.  On January 18th, 2017 there were around 1.0 to 2.0 inches of snow on exposed, undisturbed, and untreated ground surfaces.  Temperatures raised to a high of 52-54 degrees in the afternoon and then began to drop through the afternoon to freezing by 9-10PM.  Around the time of the slip and fall incident, 9PM, the weather was mainly clear with a temperature of 32-33 degrees.  Exposed, undisturbed, and untreated ground surfaces were covered with approximately a trace to 1.0 inch of any naturally precipitated snow and ice from the January 15-16th, 2017 winter storm.  (WeatherWorks weather report dated April 16, 2018).*  The WeatherWorks weather report shows that there was a significant winter snow event that occurred in the Hacienda, Colorado restaurant area that dropped 4.0 to 5.0

inches of snow or more on January 15-16[th] of 2017. Temperatures rose above freezing on January 17th and then well below freezing in the evening, creating melting and refreezing water from the snow that had fallen. Temperatures rose above freezing during the day on the 18th, but then dropped to freezing between 9-10PM. The weather report indicates that there was still a trace to 1" of snow present on the ground on January 18[th], 2017. It is my opinion from reviewing the weather report, snow totals, and temperatures that there was significant melting of snow on January 17[th], 2017 when temperatures rose to 46-47 degrees, and then the water runoff from the parking lot and grassy areas of Hacienda Colorado refroze into ice the evening of January 17[th], 2017 when temperatures fell to 17-19 degrees. It is my opinion based on the case files and my personal experience in the field watching melting and refreezing of water into ice at these temperatures that more likely than not there was ice present in the Hacienda Colorado restaurant parking lot the evening of January 18[th], 2017 on or around 9:00PM at the time of the slip and fall incident.

3.  *Hacienda II Partners, LLP had a written snow clearance agreement with Emerald Isle Landscaping, Inc. in January of 2017 to provide snow clearing and ice remediation services for the Hacienda Colorado restaurant located at 10500 Bierstadt Way, Englewood, CO 80112. The agreement states that Emerald Isle Landscaping, Inc. will come out and provide snow plowing services in the Hacienda Colorado restaurant parking lot area automatically if it snowed 2" or more. Ice Slicer was to be applied to the parking lot area with a minimum of 1 ton as per the snow clearance agreement. The snow clearance agreement dated 12/6/2016 has snow plowing and Ice Slicer services checked and initialed for the Hacienda Colorado restaurant. Hacienda II Partners, LLP made the decision to use its own employees and managers to provide sidewalk shoveling and de-icing services at the Hacienda Colorado restaurant in January of 2017 if the snow amounts were under 2" as per the snow clearance agreement. Kelly Maloney is the director of human resources for Hacienda II Partners, LLP and states that Emerald Isle Landscaping only provides ice-slicing if needed, but feels that it is rarely necessary. Kelly Maloney states that Hacienda opted out of Emerald Isle performing ongoing snow and ice mitigation for the parking lot in the snow clearance agreement. Kelly Maloney*

*states in her deposition that they only had the need for Emerald Isle Landscaping to visit their property one time in January of 2017 based on the weather conditions, and that visit was on January 5th, 2017.  She states that they do not keep weather logs, task logs, shovel logs, or ice melt logs.  She goes on to state that if there was a need for snow removal in the parking lot that it would be conducted by Emerald Isle Landscaping.  She states that the Hacienda restaurant managers have the ability to call Emerald Isle Landscaping for snow or ice removal services if needed.  (Emerald Isle Landscaping Snow Clearance Agreement dated 12/6/2016, Kelly Maloney Deposition – pages 9, 15-16, 181-188, 207-212).*  Hacienda II Partners, LLLP made the decision to utilize the snow and ice removal services of Emerald Isle Landscaping to remove snow in their restaurant parking lot if it snowed 2" or greater and made the decision to use their managers and employees internally to provide sidewalk snow shoveling and deicing services at the restaurant.  It was Hacienda's understanding, based on the snow clearance agreement, that Emerald Isle Landscaping was to automatically come to the property to remove snow once it had snowed at least 2" in the parking lot area.  The snow clearance agreement also states that ice slicer was to be used in the parking lot area to melt residual snow or icy conditions.  The WeatherWorks weather report shows that it snowed 3.9 to 5.2 inches on January 16th, 2017 but there is no indication or record that Emerald Isle Landscaping ever came to the Hacienda Colorado restaurant to remove the snow, or put down ice slicer in the parking lot area.  The only time Emerald Isle Landscaping plowed the Hacienda Colorado parking lot in January of 2017 was on January 5th, according to testimony by Kelly Maloney and documented by snow invoice #6117 dated 1/12/2017.  There is also testimony from Kelly Maloney and Jacques Gasnier that managers could call Emerald Isle Landscaping to come out and provide snow and ice removal services if needed, but there is no record of anyone from Hacienda Colorado calling Emerald Isle Landscaping to come out and remove the 3.9-5.2 inches of snow that fell just days before the slip and fall incident.  It is my opinion that Hacienda II Partners, LLLP unreasonably failed to exercise reasonable care in their snow and ice removal duties by not having snow removed from their restaurant parking lot or applying deicer to the restaurant parking lot after 3.9-5.2 inches of snow fell on January 16th, 2017.  It is my opinion that if Hacienda II Partners, LLLP had removed the snow from the parking lot and applied deicer to the parking lot that

more likely than not the slip and fall incident of Matthew Pilatti would have been avoided.

4. *Kelly Maloney states that Hacienda II Partners has protocols for snow and ice control at the Hacienda Colorado restaurant, but that there are no written policies, plans, or procedures for snow and ice removal. She states that the snow and ice removal is usually provided by the bussers at the restaurant, but that there are no records that they keep documenting the snow and ice removal services that are provided. Kelly states that Hacienda's verbal snow and ice policies and procedures were originally developed by the two majority owners of the restaurant in 1998. Kelly believes that Hacienda's snow and ice mitigation protocols and procedures are reasonable and at least comparable to beyond comparable to any public access in parking lots, shopping centers, or grocery stores. She says they are very successful in their structure and processes and that they meet any common or public area standards based on her personal experience. (Kelly Maloney deposition – pages 15-28, pages 41-42, pages 157-158, page 166.).* Kelly Maloney states that Hacienda II Partners, LLLP has no written plans, policies, or procedures for snow and ice removal at the restaurant. The snow removal policies are all verbal, and bussers are the ones that usually carry out the snow shoveling and deicing of the restaurant sidewalk areas. She states that there are no logs or written record that is used to document when the snow removal services are performed, or when deicer is applied. She believes from her personal experience that the verbal policies at the restaurant are very successful and that they meet any common or public area standards. It is shown throughout the case files that the owners and management of Hacienda Colorado did not have any written plans, policies, or procedures for snow and ice control to be used as a guideline for their workers providing snow and ice removal services at the restaurant. It is not considered a standard or best practice in the snow or ice removal industry for a commercial property like the Hacienda Colorado restaurant to not have any type of written plans, policies, or procedures for snow and ice control. It is my opinion that the verbal policies at the restaurant for snow and ice removal were not successful because 3.9-5.2 inches of snow fell on January 16th, 2017 and there were no managers or owners of Hacienda Colorado that called for Emerald Isle Landscaping to come out and

remove the snow and salt the parking lot area.  It would be considered standard practice in the snow and ice removal industry when it snows 3.9-5.2 inches that the parking lot area would be plowed, and deicer would be applied to the parking lot immediately after plowing.  It is my opinion that Hacienda II Partners, LLLP unreasonably failed to exercise reasonable care in their snow and ice removal duties by not having any type of written plan, policy, or procedure for their employees and managers to follow, and for not plowing or salting the parking lot after 3.9-5.2 inches of snow fell on January 16th, 2017.  It is my opinion that if Hacienda II Partners, LLLP had removed snow from the parking lot parking lot or applied deicer to the restaurant parking lot that more likely than not the slip and fall incident of Matthew Pilatti would have been avoided.

5. *Kelly Maloney states in her deposition that in regards to monitoring the parking lot that employees, typically bussers, would survey the parking lot, and if there was an issue they would make the managers aware of it.  There is no documentation kept or recorded by managers or employees regarding the inspections or the monitoring process.  She states that there is no specific person in charge of monitoring the weather or temperature outside, but it is the responsibility of every staff manager on duty.  Employees make assessments regarding safe conditions and that snow and ice removal work is done "as needed" with no written policies or procedures in place.  When Kelly was asked if Hacienda has any policy requiring employees to check if melting snow was causing ice to form on parking lot surfaces she replied that they have an informal policy asking them to be observant and communicate any issues of concern that they may see either in the building or exterior.  She didn't think that when the sun set on January 18th, 2017 was relevant to determining whether or not there was ice in the parking lot and did not believe that there was ice in the parking lot on January 18, 2017 based on the temperatures.  Kelly stated that if a patch of ice was discovered by an employee of Hacienda Colorado restaurant in the parking lot that they would put ice melt on it if it was a patch not larger than a car.  (Kelly Maloney deposition – pages 79-81, page 122, page, pages 126-128, page 131, page 227, page 232).  Kelly Maloney states that there is no written plan, policy, or procedure that relates to inspecting for melting and refreezing of snow in the Hacienda Colorado parking lot.  A melting and refreezing inspection*

program is a very important part of a snow and ice removal program in the industry.  It is a standard and best practice to have an inspection program in place for melting and refreezing at a commercial property like the Hacienda Colorado restaurant.  A typical melting and refreezing inspection program at a commercial property like the Hacienda Colorado has written policies or procedures in place and will designate who is in charge of the inspections, and the rules of the inspections.  It is my opinion that Hacienda II Partners, LLLP unreasonably failed to exercise reasonable care in their snow and ice removal duties by not having a proper inspection program in place for melting and refreezing of water, not properly training their managers and employees in snow and ice remediation, and by not having any written policies, plan, and procedures for how their snow and ice remediation services were to take place.

6. *Kelly Moloney states in her deposition that the Hacienda Colorado restaurant has an online log that the managers use to record important shift information daily.  This information is used to communicate between managers and record import operating information for the restaurant.  She states that if there is inclement weather, it is often noted because it impacts sales and it impacts staffing.  She states that the logs might note if Emerald Isle was called out to service the restaurant, and that they do not make notes every shift unless there is something of note.  The Daily Logbook Report for Hacienda Colorado – Lone Tree for Monday January 16, 2017 states "Cut heavy today due to snow.  Down to 9 servers then Josh no showed."  (Kelly Moloney deposition – pages 33-39, Hacienda Colorado – Lone Tree Daily Log Book – January 10-18, 2017).*  Kelly Maloney states in her deposition that the Hacienda Colorado restaurant has an internal communication system that they use among the managers to record important information daily.  The logs are also used to record if there is inclement weather, and the log book for Tuesday, January 10, 2017 to Wednesday, January 18, 2017 shows that on Monday, January 16, 2017 that there is note from Teresa Miller that states "Cut heavy today due to snow.  Down to 9 servers then Josh no showed."  Teresa Miller acknowledges that there was snow on January 16, 2017 yet in the case files and in the log book there is no record of any snow or ice removal work being initiated or performed by Hacienda Colorado during this winter event.  There is no reference to snow or ice

removal work being performed or initiated by Hacienda Colorado on January 16, 17, or 18th 2017 according to the logs provided.  It is my opinion that Hacienda II Partners, LLLP unreasonably failed to exercise reasonable care in their snow and ice removal duties by not having snow removed from their restaurant parking lot or applying deicer to the restaurant parking lot after 3.9-5.2 inches of snow fell on January 16th, 2017.  It is my opinion that if Hacienda II Partners, LLLP had removed the snow from the parking lot and applied deicer to the parking lot that more likely than not the slip and fall incident of Matthew Pilatti would have been avoided.

7. *Jacques Gasnier was a manager at Hacienda Colorado in January of 2017 and stated that he had no official training in snow and ice removal, and that he received no training in snow removal and ice remediation from Hacienda Colorado, but did receive kitchen training, along with food and alcohol training when he became a manager.  He states that responsibilities as a manager in regards to snow and ice removal at Hacienda Colorado were to look at the walkways and make sure that the area is clear.  The parking lot is big, so managers don't typically spend a lot of time walking up and down the parking lot, but they did look out there.  Jacques states that there was no one at Hacienda who managed or would try to monitor the weather that he could think of, and that if it was not snowing busboys would be checking for debris as needed.  There was not a set schedule or log that was kept.  (Jacques Gasnier deposition – Page 6, 9-10, 34, 36, 37-39).* Jacques Gasnier states that he has no official training in snow and ice remediation, and that he received no training in snow removal and ice remediation from Hacienda Colorado.  He did receive other types of training from Hacienda Colorado in regards to his duties, but not any for snow and ice removal.  It is considered standard and best practice in the industry for building owners like Hacienda II Partners, LLLP who have decided to "self-perform" their own snow and ice removal to provide some type of training for their managers and employees who are providing the snow and ice removal work.  There is a lot of information readily available on the internet today for snow and ice removal training, but Hacienda Colorado did not provide training for snow and ice removal.  Jacques Gasnier states that the parking lot was big so managers did not spend a lot of time walking around out there.  A reasonable snow and ice remediation program

would train their managers and employees to inspect the parking lot for melting and refreezing, and to watch for areas where snow could melt off grassy areas, run onto the parking lot, and create black ice. Hacienda Colorado did not provide this training, or any type of reasonable snow and ice removal training for their managers and employees. It is my opinion that Hacienda II Partners, LLLP unreasonably failed to exercise reasonable care in their snow and ice removal duties by not providing any type of reasonable snow and ice removal training for their managers and employees.

8. *Kelly Maloney states that she does not know what type of ice melt they use at Hacienda Colorado for ice mitigation, only that she has been told that it's very effective. She states that she is not an ice melt expert and has no policies or procedures regarding the application rates for deicers, and does not keep a log of what was used. She states that the amount to apply is on the bag. Jacques Gasnier states in his deposition that he did not know what kind of deicer was used at Hacienda Colorado and he doesn't know what the refreezing temperatures are with the deicer that was used. He states that he has not seen any policies from Hacienda Colorado regarding how to use deicer and that there were no policies, plans or procedures in writing. His personal policy and procedure was to apply generously. (Kelly Maloney deposition – pages 213-218, Jacques Gasnier deposition – Pages 41-42).* The owners and management of Hacienda Colorado provided no reasonable training or information for their snow removal workers regarding snow melt and deicers that are used to melt snow and ice. Kelly Maloney does not know anything about the deicing product that they were applying other than she's been told that "it's very effective". She and the other managers and employees of Hacienda Colorado had no idea how much to apply, when to apply the deicer, or when to re-apply the deicer based on the current weather or temperatures. There are many different types of deicers, and a reasonable snow and ice removal plan would include training on what type of deicer is being used, the temperatures that it will melt snow and ice down to, and the application rate that it is supposed to be applied. These rates will vary depending on the temperature and the type of deicer that is being used. It is very important to know this information in order to make an educated decision regarding melting snow and ice from parking lots and walking areas. When deicer is applied incorrectly it is very possible to

do more harm than good.  For example – By not applying the correct amount of deicer to properly melt ice and snow the deicer may start to melt ice or snow and the snow and ice will go into a partially liquid or "slushy" state.  If the decision is made to not "reapply" more deicer at the right time to continue to melt the ice and snow down to bare pavement, the liquid and or slush will "refreeze" into ice, creating a very dangerous, slick condition. It is my opinion that Hacienda II Partners, LLLP unreasonably failed to exercise reasonable care by not educating their management and employees on the proper use of deicers as a part of their snow and ice management program.  It is my opinion that if they would have properly treated the parking lot and pedestrian walking areas that the icy conditions would not have existed and the slip and fall incident of Matthew Pilatti more likely than not would have been avoided.

9. *Apolinar Meza worked as a busser at Hacienda Colorado in January of 2017 and was working the day of the slip and fall incident.  He states that his responsibility at the restaurant if it snows is to clean the entryways, walkways, and handicapped areas in the parking lot.  In regards to the rest of the parking lot, he states that it was not the employee's responsibility in regards to snow and ice removal.  He states that he does not know the brand of ice melt that he was using, it was just provided it for him and he uses it and applies it.  No one told him how much to use, he just puts ice melt on the ice. Apolinar states that if there is snow on the grass he has nothing to do with that.  He picks up trash from the parking lot and states that if there is no snow there is no need to go out to the parking lot.  He states that he is not aware of any policies at Hacienda Colorado regarding monitoring the parking lot at the Lone Tree location.  When he is asked if he received any training on how to look for snow or ice, or where ice may develop in the parking lot, he states that he does not get involved with the parking lot.  (Apolinar Meza deposition – Pages 6-11, 14, 15-16, 18, 23, 24-25).*  Apolinar Meza worked as a busser at Hacienda Colorado during the time of the slip and fall incident, and states that it was his understanding that he was to provide snow and ice removal services to the entrances and walkways of the Hacienda Colorado restaurant if it was snowing or icy outside.  He states that the only area of the parking lot that he shoveled and deiced was the handicapped parking areas at the restaurant.  He does not know anything regarding the type of deicer

that he was using, or how to properly apply it according to the manufacturers specifications. He did not receive any training for snow or ice removal from Hacienda Colorado, and he states that he does not get involved for snow and ice removal in the parking lot. It would be considered standard and best practice in the snow and ice removal industry for a property like Hacienda Colorado that has made the decision to "self-perform" their own snow and ice removal to train their snow and ice removal workers to inspect the parking lot area for melting and refreezing or icy conditions. It would also be considered standard practice in the industry for the workers to have some type of reasonable training regarding deicers, and their proper application rates depending on the outside temperature. This is especially true because Hacienda Colorado made the decision to "opt out" of the Ongoing Snow and Ice Mitigation part of the Emerald Isle Landscaping snow clearance agreement. Hacienda Colorado made the decision to not have a professional snow and ice removal company provide the ongoing snow and ice mitigation but decided to take on that responsibility using their managers and employees. It is my opinion that Hacienda II Partners, LLLP unreasonably failed to exercise reasonable care by choosing to opt out of the ongoing snow and ice mitigation service offered by Emerald Isle Landscaping, and by failing to provide any type of reasonable ongoing snow and ice mitigation services as a part of their internal snow and ice removal plan. It is my opinion that if Hacienda II Partners, LLLP would have had a reasonable snow and ice mitigation plan in place that more likely than not the slip and fall incident of Matthew Pilatti would have been avoided.

10. *Theresa Miller worked at Hacienda Colorado as a manager in January of 2017 and states that she did not receive any training on snow and ice removal, and there were no policies in regards to snow and ice removal. She states that in the parking lot the employees and managers do not service snow and ice and they don't do the parking lot. She states that there wasn't a set schedule for bussers to go out, walk around, and look for snow and ice. She states that no one would direct the bussers to look for snow and ice. Theresa states that she doesn't know what type of ice melt they used, or what chemical it was. (Theresa Miller deposition – Pages 6-9, 32-34, 35, 37-39).* Theresa Miller is a Hacienda Colorado manager that verifies that she did not receive any type of

snow or ice removal training from Hacienda Colorado.  She states that it was her understanding as a manager that the managers and employees do not service the parking lot for snow and ice removal, and that they are not responsible for this area.  She states that there was no set schedule or plan for bussers to go out and look for snow and ice, and that she does not know what type of ice melt they were using, or what chemical it was in the ice melt.  It would be considered standard and best practice in the snow and ice removal industry for a property like Hacienda Colorado that has made the decision to "self-perform" their own snow and ice removal to train their snow and ice removal managers and workers to inspect the parking lot area for melting and refreezing or icy conditions.  It would also be considered standard practice in the industry for the workers to have some type of reasonable training regarding deicers and their proper application rates depending on the outside temperature.  This is especially true because Hacienda Colorado made the decision to "opt out" of the Ongoing Snow and Ice Mitigation part of the Emerald Isle Landscaping snow clearance agreement.  Hacienda Colorado made the decision to not have a professional snow and ice removal company provide the ongoing snow and ice mitigation but decided to take on that responsibility using their managers and employees. It is my opinion that Hacienda II Partners, LLLP unreasonably failed to exercise reasonable care by choosing to opt out of the ongoing snow and ice mitigation service offered by Emerald Isle Landscaping, and by failing to provide any type of reasonable ongoing snow and ice mitigation services as a part of their internal snow and ice removal plan.  It is my opinion that if Hacienda II Partners, LLLP would have had a reasonable snow and ice mitigation plan in place that more likely than not the slip and fall incident of Matthew Pilatti would have been avoided.

11. *Hulk Sanchez was a manager at Hacienda Colorado in January of 2017 and states that all managers had the ability to contact the landscaper to come out and clean the parking lot.  He states that if they didn't come, then it was Hacienda's responsibility to ask them to come if they felt that it was necessary.  Hulk states that when there were less than 2" of snow in the Hacienda Colorado parking lot that they would look at the parking lot and just make sure that it wasn't posing any sort of threat.  He states that in the winter when monitoring the parking lot if he had noticed a patch of ice he would have someone throw*

*ice melt on it.  Hulk states that there was never any direction given in terms of how much ice melt to apply to ice in the parking lot, just to cover it and make sure that there was enough to melt it.  (Hulk Sanchez deposition – pages 5, 18-21, 26, 28, 31).*  Hulk Sanchez was a manager at Hacienda Colorado in January of 2017 and states that all managers had the ability to contact Emerald Isle Landscaping to come out and clean the parking lot area in regards to snow plowing and ice mitigation.  He states that if they didn't come, then it was Hacienda's responsibility to ask them to come if they felt that it was necessary.  He states that in the winter when monitoring the parking lot, if he had noticed a patch of ice he would have someone throw ice melt on it.  Emerald Isle Landscaping did not come to plow snow or salt the parking lot after it snowed 3.9-5.2 inches on January 16th, 2017, and there was no one from Hacienda Colorado who made the decision to call Emerald Isle Landscaping to come out to remove the snow and apply salt even though this was the internal verbal policy of Hacienda Colorado.  There was no type of reasonable inspection program in place for managers or employees to monitor or inspect for melting and refreezing in the parking lot, even though they were responsible for the ongoing snow and ice mitigation of the parking lot areas as per their snow clearing agreement with Emerald Isle Landscaping.  Hulk states that if he would have noticed an icy area in the parking lot then he would have had ice melt put on it, but if a reasonable policy is not in place to discover ice in the parking lot, dangerous icy conditions will form.  It is my opinion that Hacienda II Partners, LLLP unreasonably failed to exercise reasonable care by choosing to opt out of the ongoing snow and ice mitigation service offered by Emerald Isle Landscaping, and by failing to provide any type of reasonable ongoing snow and ice mitigation services as a part of their internal snow and ice removal plan.  It is my opinion that if Hacienda II Partners, LLLP would have had a reasonable snow and ice mitigation plan in place that more likely than not the slip and fall incident of Matthew Pilatti would have been avoided.

12. *Matthew Pilatti states in his deposition that he saw snow in the grassy areas the evening he slipped and fell, but he doesn't remember seeing any ice in the parking lot.  He states that he did not observe any salt or sand in the parking lot the day of the slip and fall, and that after falling and sitting on the ground he noticed that there was ice beneath him.*

*(Matthew Pilatti deposition – Pages 31-32, 157, 160).* It is my opinion based on the case files and weather report that there was residual snow in the grassy areas that had melted and refrozen into ice in the parking lot area. It is my opinion that more likely than not Matthew Pilatti slipped and fell on ice. It is also my opinion that Hacienda II Partners, LLLP unreasonably failed to exercise reasonable care in their snow and ice removal duties by doing absolutely nothing after it snowed 3.9-5.2 inches on January 16th, 2017. Their internal verbal policies, plans, and procedures were inadequate and Hacienda II Partners, LLLP failed to acknowledge that it had snowed enough to plow or apply deicer in the parking lot at the Hacienda Colorado restaurant on January 16th, 2017. It is my opinion that if Hacienda II Partners, LLLP had provided reasonable snow and ice removal services that the slip and fall incident of Matthew Pilatti more likely than not could have been avoided.

13. *ASTM F2966-13 Section 3.2.1 states: "Anti-icing materials, n-dry or liquid snow and ice control materials applied before a snow and ice event intended to prevent precipitation from bonding (that is, freezing) with the pavement, or weaken bonds formed for easier removal." (ASTM F2966-13).* The purpose of this standard is to emphasize the importance of salt to keep ice from bonding to the pavement. Salt is often placed before, during, and after snow and ice events to prevent melting and refreezing. It is my opinion that Hacienda II Partners, LLLP did not abide by this industry standard to apply any salt on the property before the slip and fall incident occurred. It is my opinion that if Hacienda II Partners, LLLP would have applied salt as per the industry standard that the Hacienda Colorado restaurant parking lot would have been in a much safer condition before the slip and fall incident occurred the evening of January 18th, 2017.

14. *ASTM F2966-13 Section 3.2.2 states: "De-icing materials, n-snow and ice melting products applied on top of a layer of snow or ice, or both, that is bonded to the pavement. 3.2.2.1 Discussion – Can also be applied proactively during, or after plowing or snow and ice removal". (ASTM F2966-13).* The purpose of this standard is to emphasize the importance of deicer to keep ice from bonding to the pavement. Deicer is often placed before, during, and after snow and ice events to prevent melting and refreezing. It is my

opinion that Hacienda II Partners, LLLP did not abide by this industry standard to apply any deicer on the property before the slip and fall incident occurred. It is my opinion that if they would have applied deicer as per this industry standard, that the Hacienda Colorado restaurant parking lot would have been in a much safer condition before the slip and fall incident occurred the evening of January 18th, 2017.

15. *ASTM F2966-13 Section 5.1.1 states: "Control techniques for exterior walkway surfaces include anti-icing, plowing, snow blowing, shoveling, de-icing, and/or applying sand or other abrasives." (ASTM F2966-13).* The purpose of this standard is to emphasize the importance of snow removal services and deicers to keep ice from bonding to the pavement. Deicer is often placed before, multiple times, and after snow and ice events to prevent melting and refreezing. It is my opinion that Hacienda II Partners, LLLP did not abide by this industry standard to apply any deicer on the property before the slip and fall incident occurred. It is my opinion that if they would have applied deicer that the Hacienda Colorado restaurant parking lot would have been in a much safer condition before the slip and fall incident occurred the evening of January 18th, 2017.

16. *ASTM F2966-13 Section 5.1.2 states: "Reasonable effort should be made to ensure exterior walkway surface safety for pedestrian traffic". (ASTM F2966-13).* The purpose of this standard is to emphasize the importance of keeping pedestrian walking surfaces safe. It is my opinion that Hacienda II Partners, LLLP did not apply this industry standard, and failed to exercise reasonable care in their responsibilities to provide a reasonably safe walking area for pedestrians like Matthew Pilatti at the Hacienda Colorado restaurant.

17. *ASTM F2966-13 Section 5.1.3 states: "A combination of preparatory and ongoing snow and ice control methods should be employed, as applicable." (ASTM F2966-13).* The purpose of this standard is to emphasize pre-planning before snow or ice events, and the importance of keeping up with snow and ice control during a snow or ice event. Hacienda II Partners, LLLP did not do any preparatory planning or ice control, and they failed to put down any deicer in the parking lot area for ice control. It is my opinion that

Hacienda II Partners, LLLP failed to comply with this industry standard, and unreasonably failed to exercise reasonable care in their snow and ice removal duties at the restaurant.

18. *ASTM F2966-13 Section 5.1.7 states: "Walkway surfaces should be monitored and treated for refreezing." (ASTM F2966-13).* The purpose of this standard is to emphasize the importance of an inspection program to make sure that after walkway surfaces have been shoveled and deiced that all the snow and ice has melted and the there is no snow or water that has melted and refrozen on the parking lot or walkway surfaces. There were no employees or managers of Hacienda II Partners, LLLP that properly monitored the walkway surfaces or parking lot areas for refreezing. It is my opinion that Hacienda II Partners, LLLP failed to comply with this industry standard and unreasonably failed to exercise reasonable care in their snow and ice removal responsibilities by failing to properly monitor the walkway surfaces and by not putting down any deicer on the walkway surfaces in the parking lot area that had melted and refrozen.

19. *ASTM F2966-13 Section 5.2.1 states: "Plans for snow and ice control should be in writing. Procedures should be prioritized based on volume and type of pedestrian traffic." (ASTM F2966-13).* The purpose of this standard is to emphasize the importance of having a unified and reasonable plan in place for snow and ice removal. This is especially true regarding a high profile, restaurant that is open late into the evening hours. It is my opinion that Hacienda II Partners, LLLP failed to comply with this industry standard and unreasonably failed to exercise reasonable care in their snow and ice removal responsibilities by failing to have any type of written plan for snow and ice control.

I hereby certify that I have no interest, financial or otherwise, in the outcome of this matter. I reserve the right to revise these conclusions and opinions if additional relevant information is provided.

Submitted July 16, 2018

Jeremy E. Swenson, CSP

## Materials Reviewed:

1. Emerald Isle Contracts and Invoices.
2. Hacienda's Responses to Plaintiff First Set of Interrogatories.
3. Hacienda's Response to Second set with signed verification.
4. Emerald Isle's Responses to Plaintiff's 2nd discovery.
5. Complete Emerald Isle's Invoices 2017.
6. Emerald Policy 1-136, redacted.
7. First Supplemental disclosure.
8. Initial disclosures.
9. Invoices – ice melt and lighting.
10. Payroll records - redacted.
11. Defendant Hacienda Partners LLP's Privilege log to third supplemental disclosure.
12. Shift notes for third supp.
13. Photos – combined and bates.

14. Photos of property.

15. WeatherWorks Weather Report.

16. Jacques Gasnier deposition with exhibits.

17. Kelly Maloney deposition with exhibits.

18. Apolinar Meza deposition with exhibits.

19. Teresa Miller deposition with exhibits.

20. Matthew Pilatti deposition with exhibits.

21. Hulk Sanchez deposition with exhibits.

## **Attachments:**

1. Attached and made a part of this report are my current Curriculum Vitae.

2. Information regarding my Certified Snow Professional "CSP" designation from the Snow and Ice Management Association, "SIMA".

3. SIMA – Best Practices Checklist.

4. ASTM F2966-13 Standard Guide for Snow and Ice Control for Walkway Surfaces.

# Jeremy E. Swenson, CSP

11940 Cartwright Avenue, Suite 300
Grandview, MO  64030
(816) 564-9131
jeremy@jeremyswenson.com
www.jeremyswenson.com

---

## CERTIFICATIONS/TRAINING:

- **Certified Snow Professional (CSP)**

  - Satisfied requirements by SIMA (nationally recognized trade organization-Snow & Ice Management Association) to become a Certified Snow Professional. Requirements included proficient knowledge of business, snow & ice science, sub-contractors, and snow & ice operations & techniques of the snow removal industry.
  - Served on the SIMA "Advanced Contract Clauses" national committee in 2017
  - Served on the SIMA "Best Practices" national committee in 2017.
  - Speaker on "National Snow Standards" at the 2017 SIMA 20th Annual Snow & Ice Symposium in Montreal, QC.
  - Government Facilities: Security Clearanced and trained for onsite snow operations at IRS Regional Headquarters, FBI Headquarters, Department Of Treasury Buildings, and many types of government facilities.
  - Airport: Security Clearanced, Badged, and trained in snow operations at Kansas City MKC Airport.
  - Railroad:  Trained in snow operations at 24/7 railroad facilities.
  - Medical Facilities:  Trained in snow operations at 24/7 hospitals, organ transplant centers, dialysis clinics, and many types of medical facilities.

## EMPLOYMENT HISTORY:

### *Snowmen365*, Founder, 2016 – Present

- Commercial Lawn & Landscape company providing full service lawn care, irrigation, sprinkler and landscape installation services.

### *Swenson Consulting*, Founder, 2008 – Present

- Consultant to the industry, working with building owners, property managers, tenants, business owners to assist with questions and issues.
- Expert witness on slip and fall cases – working with plaintiff and defense counsel.
- Provide case/document review, deposition testimony and court testimony.

### *Snowmen, Inc.*, Founder, President & CEO, 2005-Present

- Work with property managers and building owners to develop and write Requests for Proposal (RFP's) for snow and ice removal.
- Work with property managers and building owners to develop Snow Response Plans.
- Directed Snow and Ice Operations in the greater Kansas City metro area.
- Supervise subcontractors.
- Knowledgeable in various methods and techniques in snow and ice management with an emphasis on ice and re-freezing due to the unique weather conditions in the Kansas City area.
- Experienced with electronic and manual record keeping, snow budgets and contracts, scheduling, routing and customer service.
- Developed proprietary snow and ice management software for Snowmen Inc., which allows all aspects of operation to be run digitally.
- Experienced in working with National Service Companies on snow contracts and service.
- Custom designed and built equipment for Snowmen, Inc.'s use in servicing winter storms.

***Mulch Mart*, Founder, 1995-2005**

- Landscape supply company specializing in landscaping mulch and playground safety surfacing.
- Started snow removal division for company in 2003 and oversaw all aspects of operations from sales, subcontractors, equipment, snow removal contracts and customer service.
- Worked as a snow removal subcontractor removing and hauling snow with skid steers for various companies in the Kansas City area.
- Worked as a snow removal sidewalk subcontractor providing high level sidewalk snow and ice removal services at Menorah Medical Center and many different high profile commercial buildings.
- Snow Removal division grew in three years to one of the top 10 largest snow removal companies in Kansas City.

***Smileys Executive Golf Complex*, 1988-1995**

- Helped build and maintain executive golf course and largest private driving range facility in Kansas City area.
- Responsible for overseeing budget, equipment and materials purchasing.
- Performed all snow removal operations for Golf Course and clubhouse area.

## ABOUT JEREMY SWENSON:

Jeremy Swenson started Snowmen Inc., Snow and Ice Management Services in the basement of his home and grew it into the largest snow and ice management company in the Kansas City area and into one of the largest in the United States, both within seven years of its beginning.  Jeremy has managed winter services for over 100,000 acres of parking lot pavement and over 23,000,000 square feet of sidewalk pavement cumulatively throughout his career.

Jeremy has undergone testing to become a Certified Snow Professional (CSP.)  This designation is considered the gold standard for individuals who value professionalism and excellence in the snow and ice industry.  Jeremy maintains active membership in SIMA, the Snow & Ice Management Association as well as ASCA, the Accredited Snow Contractors Association.  Jeremy

spends time in the snow off season with continuing education provided by these snow associations to keep current with industry trends and snow removal practices.

Jeremy also maintains membership in the following professional organizations: BOMA, the Building Owners and Managers Association, IFMA, the International Facility Management Association, and IREM, the Institute of Real Estate Management. Jeremy maintains active involvement in these associations year-round, helping to stay current on the snow and ice removal needs of Building Owners and Property Managers.

Jeremy, as an active owner, personally has worked every snow and ice storm in the Kansas City area for the last 16 years and continues to manage one of the largest snow removal operations in the United States today. Jeremy is familiar with the most modern methods of snow and ice removal operations, procedures, equipment, contracts, and types of deicers used in the snow removal industry today. Jeremy has successfully navigated hundreds of slip and fall accidents and snow/ice removal related incidents. After overseeing thousands of commercial accounts over the years, Jeremy has worked through most every issue that is relevant to the snow and ice management industry.

Jeremy is one of the few owners of a large-scale snow removal operation that began as a subcontractor shoveling snow and chipping ice with ice scrapers to keep sidewalks clean. Over the years Jeremy has spent hundreds of hours working with ATV's, Plow Trucks, Skid Steers, Salters, and other types of specialized snow equipment. This "hands on" experience has given Jeremy a unique and hard to find understanding of snow removal operations and services. As CEO of Snowmen, Inc., Jeremy continues to work every snow and ice event from a sophisticated command center on a 4.2-acre property custom designed and built by Jeremy for the snow and ice business and which has the largest, privately owned salt storage dome in the Midwest.

*CV Last revised as of:  7/8/2017*

# Experience Trust — Hire a Certified Snow Professional.

The Certified Snow Professional (CSP) certification is the recognized standard for professionalism and excellence in snow and ice management services. A CSP is an experienced, educated leader in the snow & ice management industry.

## A Certified Snow Professional is:



**RELIABLE** Values consistent service and communication.

**ACCOUNTABLE** Focused on partnership, safety, and risk management.

**RESOURCEFUL** Aligned with industry best practices and highly experienced.

Hiring a service provider for snow & ice management is an essential safety and financial decision. You need a trustworthy partner you can depend on.



**CSP**
**CERTIFIED SNOW PROFESSIONAL™**

# What does it take to become a CSP?

### 1 ▸ THE APPLICATION

Individuals are only qualified to take the CSP exam if they meet strict pre-requirements tied to their direct snow industry experience, not just anyone can become a CSP. The application includes a significant financial investment.

### 2 ▸ THE PREPARATION

Preparing for the CSP exam is a rigorous endeavor that includes purchasing and reviewing these 6 different content modules:

- Business
- Snow & Ice Science
- Snow & Ice Operations
- Human Resources
- Sub-contractors
- Marketing

### 3 ▸ THE TEST

A comprehensive 200 question exam is delivered in a qualified testing center. No notes or study materials are allowed, and testers have 3 hours to complete the exam.

### 4 ▸ THE COMMITMENT

Once an individual achieves certification they must provide 15 continuing educational credits and a renewal fee annually.

**www.sima.org**



PROFESSIONALISM. EXPERIENCE.
KNOWLEDGE. EXCELLENCE.

# BEST PRACTICES CHECKLIST

**DOES YOUR SNOW & ICE MANAGEMENT PLAN INCLUDE THESE IMPORTANT GUIDELINES?** www.sima.org/bestpractices

## ESTIMATING & PLANNING:

- ☐ Utilizes a verifiable estimating system/tool to verify capacity related to size of site
- ☐ Production capacity planning based on company-established production rate guidelines, cycle times, and resource allocation projections
- ☐ Process includes client sign off on agreed-upon level of service, including site priorities and timing
- ☐ Preseason physical site inspection and staking process
- ☐ A consistent communication plan that includes multiple points of contact on each side exists between the client and service provider
- ☐ Procurement of materials, subcontractors and equipment aligns with Best Practices for Selling Snow Services procurement [Purchasing Snow & Ice Management Guide - Appendix 6B]
- ☐ Recommended level of service requirements and overall scope of work properly conveyed to operations team [Purchasing Snow & Ice Management Guide - Appendix 1]

## ENVIRONMENTAL MANAGEMENT:

- ☐ Follow local/municipal regulations for storage of deicer material
- ☐ Implement Sections 1, 2 and Section 3-Level 1. [SIMA Best Practices for Sustainable Salt Use]
- ☐ Awareness of deicing/abrasive material, proper application rate and storage impacts on fresh water resources

## EXECUTION & COMMUNICATION:

- ☐ Training process for operations team to understand contractual level of service requirements and overall scope of work agreed to in the sales process [Purchasing Snow & Ice Management Guide - Appendix 1]
- ☐ Pre-event communication to customers regarding upcoming event and planned response
- ☐ Documented snow response planning process for various storm scenarios
- ☐ Documented snow site engineering plan verifies priority areas and zones (e.g., handicap zones, fire exits and hydrants, drains, etc.) and areas for snow relocation
- ☐ Deicing materials for 3-5 regional storm events are kept in inventory at all times. Inventory includes deicing products for variable temperatures. Identify multiple sources for deicing materials procurement in case of supply challenges.
- ☐ Operations comply with ASTM Standard F2966 Standard Guide for Snow and Ice Control for Walkway Surfaces
- ☐ Define a weather monitoring process, which may include third-party outsourcing
- ☐ Implement a formal preseason training program for field operations and managers (e.g., techniques, general safety, site/route specifics, service verification, and company policies), including completion documentation
- ☐ Define a consistent communication plan for dispatch of personnel
- ☐ In-season site/route inspections monitor operational processes
- ☐ Assign a consistent manager/foreman with experience (1-year minimum) and/or snow-specific training (8-hour annual minimum) to each route/site
- ☐ Subcontractor procurement process includes verification of required resources, including quality equipment and capacity, people, materials and insurance

## SERVICE VERIFICATION:

- ☐ Implement a documented verification process (e.g., site visit/work completion logs)
- ☐ Utilize electronic reporting and location verification systems (e.g., IVR, GPS, automated vehicle location, mobile application)
- ☐ Conduct post-service inspections to verify and document service completion
- ☐ Provide post-event communications to clients related to weather and services rendered
- ☐ Follow Recommended Best Practices for Service Verification [Purchasing Snow & Ice Management Guide - Appendix 3]

## SAFETY & RISK MANAGEMENT:

- ☐ Have proper insurance coverage, including snow-specific requirements such as snow riders (i.e., CG 2292), umbrella policies, etc.
- ☐ Use a documented site engineering plan to verify where to properly locate snow to prevent thaw and refreeze hazards and line-of-sight issues
- ☐ Documented safety program and policies, including incident reporting process, ongoing education, training and implementation (e.g., tailgate talks, perimeter inspections, safety equipment and PPE)
- ☐ Parking lots and sidewalk clearing methods and policies adhere to ADA compliance guidelines, including ADA Title III - 28 CFR Part 36.304 (Priorities for Accessibility) and 28 CFR 35.133 & 28 CFR 36.211 (Maintenance of Accessible Features)
- ☐ Contractual agreements align with Best Practices for Snow Industry Risk Management and Shared Accountability [Purchasing Snow & Ice Management Guide - Appendix 4]



**SNOW & ICE MANAGEMENT ASSOCIATION**

10140 N Port Washington Road
Milwaukee, WI 53092

414-375-1940
Info@sima.org
www.sima.org





www.sima.org/hireapro

*The Best Practices Checklist and related presentation are offered to SIMA members for informational purposes only and are not a substitute for using sound professional judgment during snow and ice management activities. Best practice always depends on the circumstances of each snow and ice management project. SIMA, its officers, employees, authors and agents assume no responsibility for consequences arising from the use of, or failure to use, these recommended best practices.*

*Copyright © 2018 Snow & Ice Management Association. All rights reserved.*

This international standard was developed in accordance with internationally recognized principles on standardization established in the Decision on Principles for the Development of International Standards, Guides and Recommendations issued by the World Trade Organization Technical Barriers to Trade (TBT) Committee.



**Designation: F2966 – 13**

# Standard Guide for
# Snow and Ice Control for Walkway Surfaces[1]

This standard is issued under the fixed designation F2966; the number immediately following the designation indicates the year of original adoption or, in the case of revision, the year of last revision. A number in parentheses indicates the year of last reapproval. A superscript epsilon (ε) indicates an editorial change since the last revision or reapproval.

## 1. Scope

1.1 This guide covers snow and ice control procedures. It is intended to recommend known methods to bring about reasonably safe walkways where snow and ice may impact the safety of pedestrians.

1.2 Conformance with this guide will not alleviate all snow and ice hazards; however, conformance represents a reasonable effort to reduce pedestrian risks associated with snow and ice.

1.3 *This standard does not purport to address all of the safety concerns, if any, associated with its use. It is the responsibility of the user of this standard to establish appropriate safety and health practices and determine the applicability of regulatory limitations prior to use.*

## 2. Referenced Documents

2.1 *ASTM Standards:*[2]

F1637 Practice for Safe Walking Surfaces
F1646 Terminology Relating to Safety and Traction for Footwear

## 3. Terminology

3.1 See Terminology F1646 for the following terms: fall, friction, pedestrian, ramp, sidewalk, slip, slip resistant, and walkway.

3.2 *Definitions of Terms Specific to This Standard:*

3.2.1 *anti-icing materials, n*—dry or liquid snow and ice control materials applied before a snow and ice event intended to prevent precipitation from bonding (that is, freezing) with the pavement, or weaken bonds formed for easier removal.[3]

3.2.2 *de-icing materials, n*—snow and ice melting products applied on top of a layer of snow or ice, or both, that is bonded to the pavement.

3.2.2.1 *Discussion*—Can also be applied proactively, during, or after plowing or snow and ice removal.[3]

## 4. Significance and Use

4.1 This guide outlines key elements of snow and ice control on walkway surfaces.

## 5. Snow/Ice Control

5.1 *General:*

5.1.1 Control techniques for exterior walkway surfaces include anti-icing, plowing, snow blowing, shoveling, de-icing, and/or applying sand or other abrasives.

5.1.2 Reasonable effort should be made to ensure exterior walkway surface safety for pedestrian traffic.

5.1.3 A combination of preparatory and ongoing snow and ice control methods should be employed, as applicable.

5.1.4 Snow and ice control procedures should be prioritized based on pedestrian usage. Where feasible, parking lots should be barricaded, plowed, and treated with de-icing materials before permitting use.

5.1.5 Snow and ice storage accumulations should be located to avoid obstructing drains, downspouts, or walkway drainage features.

5.1.6 Stair systems, ramps, handrails and side rails should be cleared of snow and ice before permitting their use.

5.1.7 Walkway surfaces should be monitored and treated for refreezing.

5.1.8 Removed snow and ice should be placed/stored in a manner that does not create a slip hazard upon melting or refreezing. For example, plowing snow accumulations to lower elevations of the property or onto grassy areas may prevent potentially hazardous refreezing of melt water.

5.1.9 Removed snow and ice should not be stored in a manner that creates a safety hazard for pedestrians, such as placement that blocks a path of egress. Fire hydrants and similar fixtures that could be covered by snow and ice should be marked with reflective posts, stakes, or other distinctive markings.

5.1.10 Special attention should be given to snow and ice clearance and control during reasonably foreseeable peak pedestrian traffic periods, including but not limited to early

[1] This guide is under the jurisdiction of ASTM Committee F13 on Pedestrian/Walkway Safety and Footwear and is the direct responsibility of Subcommittee F13.50 on Walkway Surfaces.
Current edition approved July 1, 2013. Published August 2013. DOI: 10.1520/F2966-13.

[2] For referenced ASTM standards, visit the ASTM website, www.astm.org, or contact ASTM Customer Service at service@astm.org. For *Annual Book of ASTM Standards* volume information, refer to the standard's Document Summary page on the ASTM website.

[3] *National Cooperative Highway Research Program (NCHRP) Report 577: Guidelines for the Selection of Snow and Ice Control Materials to Mitigate Environmental Impacts*, Transportation Research Board of the National Academies, 2007.

Copyright © ASTM International, 100 Barr Harbor Drive, PO Box C700, West Conshohocken, PA 19428-2959. United States

Copyright by ASTM Int'l (all rights reserved); Sat Nov 18 13:15:23 EST 2017
Downloaded/printed by
Jeremy Swenson (Swenson Consulting) pursuant to License Agreement. No further reproductions authorized.

F2966 – 13

morning hours, shift change, or prior to employee, vendor, visitor, and customer arrivals, including commercial dock or receiving area driveways, steps and ramps.

5.1.11  To scrape and wipe de-icing and anti-icing materials, slush, water and other debris from pedestrian footwear at entrances, suitable walk off mats, recessed grille mats, permanent carpet tiles and similar equipment should be used. (See Practice F1637, subsection 5.4, for additional information.)

5.2  *Planning:*

5.2.1  Plans for snow and ice control should be in writing. Procedures should be prioritized based on volume and type of pedestrian traffic.

5.2.2  When utilized, snow and ice control service agreements with contractors should include means, materials, and methods for snow and ice control, as well as diagrams of areas to be serviced. Diagrams may also include locations of where snow storage accumulations should be placed to minimize slip and fall exposures.

5.2.3  Parking lots, sidewalks, exterior steps, ramps and other walkway surfaces exposed to snow and ice should be repaired and free of trip hazards, prior to winter. Where feasible, low areas or other interruptions in drainage flow in walkway surfaces should be corrected in a manner that preserves the slip resistant properties of the walkway surface.

5.2.4  Painted walkway surfaces should include the proper application of abrasives as recommended by the paint manufacturer.

5.2.5  Roof downspouts should direct drainage flow away from walkways or into underground or covered trough drains, drainage systems or landscaped retention areas rather than onto walkway surfaces that could freeze.

5.2.6  Vendor guidance regarding anti-icing and de-icing product effectiveness, temperature use, advantages, disadvantages, environmental impact, and cost per unit should be considered.[3] Pre-storm application of anti-icing or de-icing materials accelerates the melting process by creating liquid brine between the walkway surface and the snow and ice accumulation. Wetting of de-icing materials in solid form may cause the chemicals to begin melting more quickly and could reduce waste or scattering of materials.[3]

5.3  *Equipment and Materials:*

5.3.1  Motorized equipment such as plows, snow blowers, etc., should be utilized where manual methods cannot control snow and ice quickly enough or it would be impractical to use manual methods.

5.3.2  Manual snow removal equipment, such as shovels, scrapers, brooms, and similar equipment should be utilized for detailed removal of snow and ice.

5.3.3  Anti-icing or de-icing equipment should be in good condition and free of leaks.

5.3.4  Workers using anti-icing and de-icing solutions should be trained on application requirements and techniques, preferably by the vendor, if proprietary products are used. Special training may be needed, including the amount to apply and the effect of warming temperatures and increased humidity.

5.3.5  When snow removal or the use of de-icing materials are not possible, sand and other abrasives can be used to create traction.

## 6. Snow and Ice Control—High-Traffic Parking Areas

6.1  Snow and ice accumulations between parked vehicles should be removed, where practical, to reduce patches of ice and the potential for refreezing.

## 7. Keywords

7.1  anti-icing; control; de-icing; ice; refreezing; snow

ASTM International takes no position respecting the validity of any patent rights asserted in connection with any item mentioned in this standard. Users of this standard are expressly advised that determination of the validity of any such patent rights, and the risk of infringement of such rights, are entirely their own responsibility.

This standard is subject to revision at any time by the responsible technical committee and must be reviewed every five years and if not revised, either reapproved or withdrawn. Your comments are invited either for revision of this standard or for additional standards and should be addressed to ASTM International Headquarters. Your comments will receive careful consideration at a meeting of the responsible technical committee, which you may attend. If you feel that your comments have not received a fair hearing you should make your views known to the ASTM Committee on Standards, at the address shown below.

This standard is copyrighted by ASTM International, 100 Barr Harbor Drive, PO Box C700, West Conshohocken, PA 19428-2959, United States. Individual reprints (single or multiple copies) of this standard may be obtained by contacting ASTM at the above address or at 610-832-9585 (phone), 610-832-9555 (fax), or service@astm.org (e-mail); or through the ASTM website (www.astm.org). Permission rights to photocopy the standard may also be secured from the ASTM website (www.astm.org/COPYRIGHT/).

Copyright by ASTM Int'l (all rights reserved); Sat Nov 18 13:15:23 EST 2017
Downloaded/printed by
Jeremy Swenson (Swenson Consulting) pursuant to License Agreement. No further reproductions authorized.